Case 1:21-cr-00006-TJK   Document

Case: 1:21-MJ-00025
Assigned to: Judge G. Michael Harvey
Assigned Date: 1/8/2021
Description: COMPLAINT W/ARREST WARRANT

**STATEMENT OF FACTS**

On January 6, 2021, your affiant, Julie K. Williams, was on duty and performing my official duties as a Special Agent with the Federal Bureau of Investigation ("FBI"). As a Special Agent, I am authorized by law to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Vice President Mike Pence was present and presiding in the Senate chamber.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

With the joint session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades surround the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. At such time, the joint session was still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

**DOUGLAS AUSTIN JENSEN (JENSEN)** of Des Moines, Iowa, traveled to the District of Columbia to participate in a rally and protest at the U.S. Capitol. **JENSEN** is an adherent of "QAnon," also known as "Q," and wore a "Q" t-shirt to the protest. **JENSEN** was among the first

members of the crowd to push his way inside the United States Capitol and, in doing so, he refused multiple orders by a uniformed Capitol Police officer to stop, place his hands up, and back up. Video footage from January 6, 2021, which has since been published by The Guardian—an international news media company, shows **JENSEN** leading a crowd of followers inside United States Capitol.

As the crowd moved forward, a lone Capitol Police officer ordered **JENSEN** to stop and put his hands up. Rather than comply with the order, **JENSEN** led the crowd toward the officer in a menacing manner, causing the officer to retreat and repeat his commands. **JENSEN** continued to lead the crowd toward the officer. When the retreating officer reached a staircase, the officer turned and ran up a flight of stairs in an attempt to get to back up. The video footage captures **JENSEN** chasing the officer up the stairs and shouting at the officer. Twice more, the officer orders **JENSEN** to stop and raises his hand to keep **JENSEN** from advancing. Both times **JENSEN** continued to advance in a menacing manner, with the crowd following behind him, forcing the officer to continue to retreat. The officer was able to retreat to an area occupied by several additional Capitol Police officers, at which point the officers were able to stop **JENSEN** and the rest of the crowd from advancing.

On January 8, 2021, **JENSEN** turned himself in to the Des Moines Police Department and said that he wanted to talk to someone because he thought he was in trouble. An FBI Special Agent and a Detective from the Des Moines Police Department interviewed **JENSEN** in an interview room at the station. Prior to conducting the interview, **JENSEN** was informed that the interview was being conducted voluntarily at his request, and that he was free to leave. **JENSEN** was also informed that the interview was being recorded. During the course of the interview **JENSEN** admitted that he was the person seen in the video published on The Guardian. **JENSEN** specifically admitted chasing the Capitol Police officer up the stairs, and that he refused to obey the officer's lawful orders. **JENSEN** stated that he intentionally positioned himself to be among the first people inside the United States Capitol because he was wearing his "Q" t-shirt and he wanted to have his t-shirt seen on video so that "Q" could "get the credit."

Based on the foregoing, your affiant submits that there is probable cause to believe that **DOUGLAS AUSTIN JENSEN** violated 18 U.S.C. §§ 1752(a)(1) and (2), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions or attempts or conspires to do so. For purposes of Section 1752, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that **DOUGLAS AUSTIN JENSEN** violated 40 U.S.C. §§ 5104(e)(2)(A) and (G), which make it a crime to willfully and knowingly (A) enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble

Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

  Finally, your affiant submits there is probable cause to believe that **DOUGLAS AUSTIN JENSEN** violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

_____
JULIE K. WILLIAMS
SPECIAL AGENT, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 8th day of January 2021.

G. Michael Harvey
2021.01.08 19:36:31
-05'00'
_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE