# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21cr0006 (TJK) |
| | : | |
| DOUGLAS AUSTIN JENSEN, | : | |
| Defendant. | : | |

## MOTION TO REVIEW DENTENTION WITHOUT BOND

Douglas Jensen, by and through his attorney, Christopher M. Davis, moves to have his detention without bond status reviewed.  Jensen moves this Honorable Court to reimpose the conditions of release that were set in the NDIA at the time of his arrest.  In support thereof, he states as follows:

## PROCEDURAL HISTORY

1.  On January 8, 2021, Doug Jensen was arrested in his home state of Iowa on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint arising out of the riot at the United States Capitol building on January 6, 2021.

2.  On January 11, 2021, a federal grand jury sitting in the District of Columbia returned a six-count Indictment charging Jensen with Obstructing a Law Enforcement Officer During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding a Federal Law Enforcement Officer, in violation of 18 U.S.C. § 111(a)(1); Entering and Remaining, Disorderly and

1

Disruptive Conduct inside a Capitol Building, in violation of 18 U.S.C. §§
1752(a)(1)-(2); and Violent Entry and Disorderly Conduct, and Parading,
Demonstrating and Picketing in a Capitol Building, in violation of 40 U.S.C. §§
5104(e)(2)(A)-(G). (Dkt. 3).

3. Jensen appeared for Rule 5 proceedings in the Southern District of Iowa
on January 12, 2021, in case Number 4:21-mj-11-HCA. The United States made a
motion to detain the defendant without bond pending trial. The defendant was
arguably subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E), which provides
for detention in cases where a defendant committed a crime while in possession of
a deadly weapon— and Jensen was in possession of his work knife when he is
alleged to have committed the charged crimes.[1] Chief Magistrate Judge Helen C.
Adams ordered Defendant's temporary detention pending an identity and
detention hearing. Id. (SDIA Dkt. 10).  Defendant waived the identity hearing, but
a detention hearing was held on January 19, 2021. Id. (SDIA Dkt. 14-16).

4. On January 21, 2021, Magistrate Judge Adams ordered Defendant
released pending trial and established release conditions. Id. (SDIA Dkt. 17-18). [2]
Magistrate Judge Adams stayed her ruling until January 27, 2021, to allow the

---

[1] The Bail Reform Act does not define the term "dangerous weapon," nor is defendant aware of any case in this
Circuit or any other that defines "dangerous weapon" as used in the Bail Reform Act.  Courts have consistently
defined "dangerous weapon" as an object that is either inherently dangerous or is used in a way that is likely to
endanger life or inflict great bodily harm. See *United States v. Anchrum*, 590 F.3d 795, 802 (9th Cir. 2009); United
States v. Smith, 561 F.3d 934, 939 (9th Cir. 2009) (en banc); *United States v. Sturgis*, 48 F.3d 784, 787–88 (4th Cir.
1995); *United States v. Gibson*, 896 F.2d 206, 210 & n.1 (6th Cir. 1990); *United States v. Guilbert*, 692 F.2d 1340,
1343 (11th Cir. 1982) (per curiam). "Inherently dangerous" weapons are those that are "obviously dangerous" such
as "guns, knives, and the like." *Smith*, 561 F.3d at 939 (quoting *United States v. Riggins*, 40 F.3d 1055, 1057 (9th
Cir. 1994)).
[2] *See*, Exhibit 1, ORDER SETTING CONDITIONS OF RELEASE AND STAYING ORDER TO ALLOW FOR
APPEAL

United States an opportunity to appeal to this Court pursuant to 18 U.S.C. § 3145(a).  An Emergency Motion Stay and Review Release Order was filed by the United States on January 22, 2021.  See, Dkt. 5.  Mr. Jensen remained in custody and was transported to the District of Columbia by the United States Marshal Service.

     5.  Mr. Jensen's indictment has been superseded twice since his release conditions were set in Iowa.[3]  The new charges are basically additional ways to charge the same conduct that he is alleged to have engaged in on January 6, 2021.  One of the added counts, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, §§ 1512 (c)(2) and 2, carries a maximum sentence of 20 years and drives his sentencing guideline range.[4]

     6.  Mr. Jensen's first appearance in this District was on February 23, 2021.  At that time, he entered a plea of not guilty and agreed to detention without bond, specifically reserving his right to revisit this issue when his counsel became more familiar with the facts and evidence in the case.  This Court accepted Jensen's agreement to detention without bond, finding that though there was no presumption of detention, his detention was warranted based on the facts described in the government's Emergency Motion Stay and Review Release Order.  Dkt. 5.  Jensen has remained in detention on a finding of clear and convincing evidence that no condition or combination of conditions of release will reasonably

---

[3] The second superseding indictment is simply characterized as an "Indictment."  *See*, Dkt. 17.
[4] A preliminary calculation of the defendant sentencing guideline range starts and basically ends with U.S.S.G. § 2J1.2.  This results in a worse case guideline range of 41 to 51 months if Jensen is credited with acceptance of responsivity.

assure the safety of the community.  *See*, Exhibit 2, Order of Detention filed on February 23, 2021.

7.  Mr. Jensen now requests release to the conditions that were set in the NDIA. *See*, Exhibit 1.  He addresses the relevant facts and issues as follows.

## ARGUMENT

8.  In one's wildest imagination, no one could have predicted the events of late 2020, culminating on January 6, 2021.  Neither Alex Huxley's Brave New World (1932) nor George Orwell's Nineteen-Eighty-Four (1949), or for that matter, any futuristic novel since then would come close to foreseeing this future now present.  A billionaire reality TV show host turned president becoming the savior to a disillusioned/pandemic-weary, largely blue-collar working-class middle America. The internet, with its lightning speed, and few if any reality checks, spawned yet an even more bizarre offshoot, QANON - described as an American far-right conspiracy theory alleging that a cabal of Satanic, cannibalistic pedophiles run a global child sex trafficking ring and conspired against former President Donald Trump during his term in office.  The media lies, the government is corrupt, and the election was stolen was the message.

9.  It is against this backdrop, Douglas Jensen went to the U.S. Capitol to observe what he thought was going to be "The Storm", the moment all those with ideologies at odds with what he was hearing and reading on the internet were going to be arrested.  He went on his own - to observe.

10.  This Court found that Mr. Jensen should be detained based on

fundamental factual conclusions contained in the government's Emergency Motion Stay and Review Release Order, that, among other reasons, Jensen unlawfully entered the Capitol, armed with a knife, refused to obey orders to leave and led a mob in a chase after Officer Goodman of the Capitol Police.  The Court also found that Jensen wanted to participate in an event that he thought was going to result in the arrest of the Vice President and members of Congress, to prevent the inauguration of Joseph Biden.   Mr. Jensen respectfully disagrees with those conclusions.

11.  Doug Jensen was not an intended part of any group or mob at any time that day.  He simply went to observe "The Storm."   He was at the front of the crowd, but in no way leading anyone.   He was in front of everyone for the now disclosed silly reason to get Q recognized for "The Storm" that was about to take place.  A fair review of the video clip capturing the events of that day demonstrates that Jensen was on his own and moved on his own, irrespective of the others.[5]   He never touched anyone in an aggressive manner. When pushed back by Officer Goodman, he just stands there and looks at him.  Even when threatened by Officer Goodman, armed with his baton hoovering over Jensen's head, Jensen simply states "I will take it for my country."  As misguided as he was, he believed he was a patriot waiting to observe the events anticipated by "The Storm."  To be certain, Jensen refused to obey Officer Goodman's order to stop and leave.  And he did continue to follow him up the steps inside the Capitol.   However, at one point, Jensen followed

---

[5] Undersigned will provide Chambers with a copy of the video discussed in advance of the hearing.

Goodman up the steps at Goodman's suggestion.  The United States concedes this point in its motion; "*Officer Goodman baited Defendant into continuing to follow him – luring Defendant and the mob away from the Senators*…." See, Dkt 5 at 11 (emphasis added).   But Jensen neither threatened physical harm to anyone nor did he destroy any property.  He never even planned to go to the Capitol, and certainly did not plan to "arm himself" and "violently" interfere with governmental functions.  As odd as it sounds, he was there to observe.  He told this to the FBI when he voluntarily met with them and described what occurred – on video.[6]  He told them he had his work pocketknife on him for protection when he went to the Trump rally preceding the march to the Capitol.  There had been clashes on the streets of DC during a late 2020 Trump rally.  Simply put, he did not have his work pocketknife to arm himself in a violent attempt to overthrow the government.

12.   Doug Jensen became a victim of numerous conspiracy theories that were being fed to him over the internet by a number of very clever people, who were uniquely equipped with slight, if any, moral or social consciousness.  Jensen is a blue-collar union laborer who has been supporting himself since the age of 16.  He has lived with his wife since he was 17 years old.  He has lived in Des Moines, Iowa his entire life.  He is a devoted father, with minor children.  Jensen's initial attraction to QANON was its stated mission to eliminate pedophiles from society.  A fiercely protective family man, this was a powerful theme for him to latch onto.  This played into Jensen's unique background.  The product of a dysfunctional

---

[6] Counsel can make a copy of this video available to the Court, if requested.

childhood, he spent the majority of his childhood in foster care.[7]   For reasons he

does not even understand today, he became a "true believer" and was convinced he

doing a noble service by becoming a digital soldier for "Q."  Maybe it was mid-life

crisis, the pandemic, or perhaps the message just seemed to elevate him from his

ordinary life to an exalted status with an honorable goal.  In any event, he fell

victim to this barrage of internet sourced info and came to the Capitol, at the

direction of the President of the United States, to demonstrate that he was a "true

patriot."  Six months later, languishing in a DC Jail cell, locked down most of the

time, he feels deceived, recognizing that he bought into a pack of lies.  And perhaps

most hurtful to him is that his family, whom he has always worked at least one if

not two jobs, is now suffering extreme financial hardship as a result of his

unanticipated detention.  He came to DC to support the president; he did not

foresee the destruction of his family.   This love of family is the anchor that has

brought Doug Jensen full circle.

13.  On the facts of Jensen's case, he respectfully disagrees with the

conclusion that by clear and convincing evidence, there are no conditions or

combination of conditions of release that will reasonably assure the safety of the

community.  His behavior at the Capitol did not involve a violent touching of

anyone, even acknowledging the apparent tension between the government and the

defense interpretations of what actually occurred on January 6, 2021.[8]  The

---

[7] Jensen's mother was a diagnosed paranoid schizophrenic who was institutionalized over 30 times during his formative years.
[8] To detain Mr. Jensen would be at odds with many other Capitol rioter cases where defendants, entered the Senate Chamber (leafing through documents and destroying property), engaged in physically assaultive behavior, and carried true dangerous weapons for the purpose of harming people.

conditions set in the NDIA eliminate concerns over influence by the internet, not that that is a viable concern anymore.   Allowing Mr. Jensen to go to work and remain in home detention more than adequately satisfies any concern for community safety.[9]  Perhaps most important is Doug Jensen's love and concern for his family.  This is the anchor that the Court can count on to assure the safety of the community.  It is the wakeup call that ended his victimization.  In addition to the conditions set by the SDIA, counsel would also suggest mental health treatment as deemed warranted by Pre-Trial Services.

14.  The Bail Reform Act of 1966 states, "[t]he law requires reasonable assurance [,] but does not demand absolute certainty" that a defendant will comply with release conditions because a stricter regime "would be only a disguised way of compelling commitment in advance of judgment." *United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969).  In *United States v. Munchel*, a recent Capitol rioter case decided by the D.C. Circuit, the Court held that the District Court should consider whether a defendant poses an articulable future threat to the community in view of his conduct on January 6 and the particular circumstances of January 6.  The Court went on to find that the District Court based its dangerousness determination on a finding that alleged conduct indicates that he is willing to use force to promote his political ends," and that "[s]uch conduct poses a clear risk to the community." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021).  *Munchel* was also in possession of a dangerous weapon (a taser gun) as he rummaged through the

---

[9] For additional conditions of release, see exhibit 1.

Senate Chamber, with zip ties attached to his belt.  The D.C. Circuit found that this did not demonstrate a future threat to the community, remanded the case back to the District Court where *Munchel* was ultimately released on conditions less stringent than the conditions detailed in the SDIA release order.

15.   Mr. Jensen's wife is also willing to serve as a third-party custodian.  She is prepared to testify at a hearing on this motion and also drive to DC, pick up Mr. Jensen and return to the family home in Des Moines, where he would remain under house arrest with other conditions as outlined above.

16.   Finally, Mr. Jensen needs to get his affairs in order in the event the parties arrive at a disposition in his case.  He has exposure, but it is relatively minor considering the cases that come though U.S. District Court.  He just needs time to organize his affairs, work pending resolution of his case (one way or another), and get his union health insurance extended to cover his family.  He would also like to have opportunity to voluntarily surrender, if convicted.  This would save substantial judicial resources and is not out of line for cases with this type of exposure. Voluntary surrender has an enormous impact on an inmate's security level.  And with the recently enacted FIRST STEP ACT OF 2018, and the availability of Earned Time Credits (ETC's), his security level will impact where he is housed and possibly his eligibility for various programing options.

WHEREFORE, Mr. Jensen moves this Honorable Court to give him a chance and release him on conditions pending resolution of his case.

9

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Counsel for Douglas Jensen
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 7th day of June 2021.

_____/s/_____
Christopher M. Davis