**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 21cr0006 (TJK)** |
| | : | |
| **DOUGLAS AUSTIN JENSEN,** | : | |
| **Defendant.** | : | |

**REPLY TO GOVERNMENT RESPONSE (Dkt. 24)**

Douglas Jensen, by and through his attorney, Christopher M. Davis, respectfully submits that on January 6, 2021, he did not physically assault anyone, nor did he destroy any property at the Capitol.  Mr. Jensen did not plan in advance to go to the Capitol nor did he coordinate with anyone else.  Mr. Jensen submits that he neither led any group activity nor did he "use" a dangerous weapon or plan in advance to bring one to the Capitol that day.  And the video and photographic evidence, along with the FBI's investigative interviews proves this.  He requests that he be released pending trial, as required by 18 U.S.C. § 3142, on the conditions of release that were imposed shortly after the detention hearing held in the Northern District of Iowa (NDIA).

1. In the first instance, many of the allegations in the government's response, some of which contain veiled threats of other criminal activity and yet additional charges, the defense is hearing about for the first time.  Almost six months have passed since Jensen's arrest, he has been indicted three times, and now the government alleges it may indict him with new charges based on new evidence it

recently discovered in sifting through his cell phone – apparently last week. Evidence of which Jensen learned about in its response to his motion for release. The defense sent a 1 TB storage device to the government over a month ago. The government ran into technical difficulties which prevented them from loading the contents of Jensen's cell phone onto the storage device. They tried three times to no avail. Then the government attorney withdrew and another one was substituted. At that time, the defense requested that it at least needed the videos and pictures from the Capitol incident that were on the phone. Recently, a second attempt to provide the contents of the cell phone failed, as a consequence of the medium that was provided to counsel.[1] To date the defense does not have the text messages from Mr. Jensen's cell phone, many of which he is learning about for the first time when the government filed its response to Mr. Jensen's request to have the bond hearing he reserved his right to request at the initial presentment. The defense had no idea new allegations were forthcoming and did not receive the photos and the videos from his cell phone until late last week.[2]

2. In the same pleading, the government complains that Mr. Jensen should not get his day in court for his initial bond hearing, despite the fact much of what it is alleging is new and some of which still has not been provided to the defense. The government completely sidesteps the fact that at the initial appearance, Mr.

---

[1] On June 10, 2021, a disk was provided by the FBI field office to the defense. The contents of the cell phone had been loaded onto a "blue ray" disk, an outdated medium from 2008 that requires a special player. Needless to say, attempts to open this failed

[2] As discussed below, the photos and videos do not capture any acts of violence, much less support any of the new allegations of additional wrongdoing by Mr. Jensen.

Jensen agreed to detention, *specifically reserving the right to come back before the Court once discovery was provided and he had some familiarity with the case.*[3] Noteworthy is the fact the Court accepted counsel's representations at that initial appearance on February 23, 2021, and at that time, the government raised no objection.

   3. Mr. Jensen agrees that many of the acts of January 6, 2021 were chaotic and disturbing.  There is no denying that there are many people in this country who feel alienated, outdated, and powerless as we all march forward in the 21st Century.  Jobs have become obsolete, society as they knew it is changing.  Despite the disturbing behavior observed that day, Mr. Jensen is entitled to fair process. He is entitled to be advised of the evidence in advance, not to be repeatedly indicted, and not to be sandbagged as he goes through the system.  At the February 23, 2021 arrangement, Mr. Jensen agreed to detention "specifically reserving his right to request a hearing once discovery was provided and he became familiar with the evidence" that the United States had against him.  Mr. Jensen submits that his request for a hearing now is not a reopening of the hearing, but his initial request for a hearing.  Jensen is not rearguing facts from the original hearing nor is he advancing theories already considered and rejected.  He is simply doing as this Court authorized him to do, contesting detention now that he has had an opportunity to familiarize himself with the facts of the case.  And at that, he is being

---

[3] On one hand, it is understandable that the United States misunderstood what occurred at that hearing.  The current counsel for the United States was not its counsel of record on February 23, 2021.  However, government attorneys are fungible, it is the nature of the organization, which has vast resources at its disposal.

confronted with new and unproven allegations.

4.   The Court is specifically authorized to continue a detention hearing for "good cause."  18 U.S.C § 3142 (f)(2).  Though not directly on point, it would be fundamentally unfair to accept Mr. Jensen's representations on the 23rd and then deprive him of the right to request a detention hearing now.  He is now prepared to argue what he now knows about the case.  Not to overlook the fact that the *Munchel* decision was returned by the Circuit after February 23, 2021.[4]  The Circuit's decision in *Munchel* outlines the fact-based analysis to be utilized in reviewing bond for the many January 6 Capitol rioter cases.

5.   In the final analysis, this Court has the power to and should hear Mr. Jenson's opposition to his continued detention without bond.  And the cases cited by the government in its response do not undercut his right to now have his hearing.  Mr. Jensen, in turn, replies to the government's response to his motion to reinstate the NDIA Magistrate Judge's decision to release him to home detention with conditions.[5]

### THERE IS NO VIOLENT LIFE-THREATENING CONDUCT

6.  Violence is defined as "Behavior involving physical force intended to hurt, damage, or kill someone or something."   See the Oxford English Language Dictionary referenced   https://www.lexico.com/definition/Violence. The Supreme Court in *Johnson v. United States* defined "physical force" as "force capable of

---

[4] *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).
[5] A transcript of the preventive detention hearing held in the NDIA is attached as Ex. 1.

causing physical pain or injury to another person." 559 U.S. 133, 140 (2010).  The government's response repeatedly refers to Mr. Jensen's violent behavior.  Yet there is nothing even remotely resembling a violent act on his part on January 6, 2021. He literally did not lay a finger on any individual, law enforcement or otherwise. He personally did not damage any property, and not once does he address the crowd trailing behind him in the Capitol that day.  Not once does he ever acknowledge that he is aware anyone is even behind him.[6]  And perhaps most importantly, the whole incident inside the Capitol is *captured on video* (with audio) and supports Mr. Jensen's recounting of what occurred there on January 6, 2021.  *See*, Ex. 2.  The video was presumably made by a reporter and is one minute and 30 seconds long, essentially the duration of Mr. Jensen's relevant acts that day in the Capitol.[7] There is not one second in that video, nor any other video or photograph, that the defense is aware of, that captures Mr. Jensen raising a hand or engaging in physical contact with anyone.  And aside from the reporters and numerous others inside the Capitol videoing and photographing what was going on, there is the whole Capitol surveillance camera network, none of which has been proffered as supporting the government's groundless allegations of "violence" by Mr. Jensen.  The inside of the Capitol that day was a chaotic scene.  Reporters all running around filming and

---

[6] This fact is supported by the government's own words when it states that Jensen is basically single focused and unaware of what others are doing around him, "he appeared unfazed by the loud explosion of a fire extinguisher behind him."  Dkt. 24 at 13.

[7] The defendant's best friend was interviewed (recorded) by the FBI.  In addition to what the government cites in Dkt. 24 at 7, the friend goes on to state how Jensen's behavior is totally at odds with the person he has known for over 20 years.  He told the FBI that "this is not him" and that you cannot define a man for 24 hours of his life.  Here, a matter of minutes is at issue.  This man travelled to DC with Jensen and, as Jensen told the FBI, he had no intention of doing anything other than go to the Trump rally, he was not part of any group or acting in concert with anyone.  On impulse, Jensen went to the Capitol to witness the "storm" and that is what everyone of his text messages corroborate.  He neither intended nor engaged in any violent acts.  He was an observer.

photographing, some politicians and some law enforcement giving the rioters fist bumps and high fives, and most importantly, it was all televised, almost immediately.   Contrary to what Gil Scott Heron predicted concerning civil discontent, this incident was televised.  See, Gil Scott Heron, *The Revolution Will Not Be Televised*.  **https://www.youtube.com/watch?v=QnJFhuOWgXg**  And the photographs and videos demonstrate that the government's allegations of violent behavior by Jensen are unfounded.

7.   The government's memo states that "he was willing to engage in violent, harassing, and life-threatening conduct in order to promote his beliefs…"  See, Dkt. 24 at 6.  Powerful words, but unsupported by evidence.  Peaceful disobedience yes, but Mr. Jensen committed no violent acts and to characterize his running up the steps of the Capitol as "life threatening" is without support.[8]  This incident "was televised."  See, Ex. 2.  Mr. Jensen is neither charged with a crime of violence nor is he subject to a presumption of detention.   The government's memo is sprinkled with innuendos and unproven facts and, in the end, is more of a tribute to its attorneys' creative writing skills than a recounting of what exists as evidence.  Both the video (Ex. 2 - which has an audio track) and the two-hour interview of the defendant clearly establish that the defendant simply believed he was there to

---

[8] This characterization of "life threatening" – threatening to cause physical injury - results in a 8 point enhancement in Jensen's guideline range (41-51 months).  Acceptance of a plea offer required a written admission that he threatened physical injury to Officer Goodman.  The video does not support characterizing this conduct as "life threatening."  The government's theory is when Jensen said "I will take it" that this was life threatening.  In the first instance, there is a factual dispute about what was said, and even the government concedes that whatever was said may not have been an intended threat.  Dkt. 24 at 13.  And how can Jensen be held accountable for the actions of others unless he is acting in concert with them.  Yet another fact in dispute and unsupported by the video.

witness "the storm" that day.[9]  He expected to witness politicians being arrested. His two-hour voluntary interview with the FBI corroborates this.  He literally asked the FBI agents during his interview whether the arrests had taken place yet.  The video of the voluntary interview also corroborates his lack of planning or acting in concert with anyone.[10]  His comments to law enforcement in the Capitol were literally limited to asking them why they were not arresting the corrupt politicians.

8.  Repeatedly, the government references Jensen's "willingness to hurt law enforcement" (Dkt. 24 at 6), "clashing with police" (Dkt. 24 at 16)[11], and "violent assault" (Dkt. 24 at 16).  All of these allegations are unsupported by the video footage either in or out of the Capitol.  The fact that Jensen picked up a hat off of the floor, took a selfie, and then when told to put it down, did so, does not imply he assaulted anyone.  Had he physically removed that hat from one the officers, we would have heard of this and seen it long before today. He engaged in no acts of violence.[12]

9.  Jensen acted on his own.  Telling is the audio to the video when others are yelling in the background, Jensen just stands there.  Ex. 2.  Jensen never looks behind, never acknowledges the crowd nor does he address anyone.  The whole scene was chaotic.  Reporters were everywhere snapping photos and one of them

---

[9] Counsel can make Mr. Jensen's two-hour voluntary interview with the FBI available to the Court if requested.
[10] His best friend, who went to the Trump rally, but not the Capitol, with him corroborates this in his tape-recorded interview with the FBI.
[11] Everyone that was in the Capitol made their way past security outside.  There is absolutely no evidence whatsoever that Jensen "clashed with police officers" outside the Capitol.  He did not even go up the steps, he climbed the wall.
[12] He is guilty of behaving foolishly.  Scaling the wall of the Capitol, as did many others, and doing his Rocky pose. However, even if it is him yelling "Storm the White House, that's what we do," he is not directing the crowd, he is simply memorializing the event.  And the Capitol was in no uncertain terms "stormed" by hundreds of people.

must have made the video (Ex. 2) that captured the whole Officer Goodman ordeal.

10.   The most compelling evidence of what occurred is captured on video, coupled with audio.  Jensen, when threatened with the baton Officer Goodman had stated "I will take it for my country."  You hear I will take it, but what immediately follows is muddled, but something follows.  Ex. 2 at 35 to 38 seconds.  Jensen never puts a hand on Officer Goodman, and in fact, he never raises a hand to Officer Goodmen when the baton hovers above his head. See, Ex. 2 at 31 seconds and the included still shot.



Nor does Jensen raise a hand when shoved back with such force that his large frame falls back against the wall.  He just stands there.  *See*, Ex 1 at 51 seconds and the following still shots from that video.



11.   There is no video or photographs of Jensen raising a hand at any time.
Nor has any internal Capitol surveillance video been disclosed that captures any
violent act on Jensen's behalf.  Jensen, as silly as it sounds, was there to observe.
And when he spoke, he simply questioned why the police were not arresting the
politicians.

12.   Mr. Jensen has felony charges, however there are disputed issues of fact
on what he was actually doing on January 6, 2021.  The government believes he
was actively trying to block the electoral count.  Jensen states he was there to
witness the storm.[13]  He expected the vote to be blocked, but not by him.  He wanted
to see it happen.  At this stage of the case, he is cloaked with the presumption of
innocence and since he not charged with a violent offense, he should be afforded
release with conditions.

13.   There are degrees of dangerousness and Mr. Jensen's possession of his
work pocketknife, which remained in his pocket the whole time he was in the

---

[13] The FBI agent called at the preventive detention hearing in the SDIA provided sworn testimony on this point.
See, Ex. 1.

Capitol, indisputably falls at the lower end of the dangerousness spectrum.[14]  The reckless suggestion that Mr. Jensen was patting his pocketknife (Dkt. 24 at 16) is absolutely unsupported.  Again, this incident was "televised", and the best evidence is the video itself.  The authorities were not even aware that Jensen had this pocketknife until he voluntarily went to the FBI field office in Des Moines and spoke at length about his activities on January 6, 2021.  It was during this lengthy interview that Jensen told the FBI he had his work pocketknife on him, but notably, he does not say where he had it on his person.  He had his work knife on him in the event he was attacked at the Trump Rally, the only event for which he came to Washington that day.  He had several videos on his cell phone, which he voluntarily allowed the FBI to download, that included videos of Trump supporters being attacked on the streets in DC during earlier Trump related events.   This pocketknife, though in his possession at the time he entered the Capitol, played no part in his conduct while he was in the Capitol.

14.  Everyone who was unauthorized to be in the Capitol that day had to pass what was at one point a line of law enforcement.  Again, there is no evidence that Jensen clashed with anyone outside the Capitol.  His phone had two pictures of a small piece of metal fencing that was tipped over – nothing indicates he took any part in knocking it over.  He went with the crowd that was advancing towards the Capitol, as did hundreds of others.   Everyone walked by the fallen fencing,

---

[14] The government argues that Jensen committed an "aggravated felony" that day.  This is an enormous play on words.  One, it presumes an "assault" and two, the status becomes aggravated because he was committing a felony – being in the Capitol to interfere with the electoral count.  Not engaging in violent life-threatening conduct.

otherwise they would not have reached the Capitol.  No body cam, cell phone, or surveillance video provides evidence that Jensen engaged in any type of violent or destructive behavior.  This incident was "televised' as we all know from viewing the countless news videos and images of men beating police officers, breaking out windows, tearing down fencing, and basically violently engaging law enforcement.  But none exists of Jensen doing any of this.  The worst characterization is that he jumped the line to advertise his silly shirt and ran up the steps of the Capitol (at times at Officer Goodman's suggestion – Dkt. 5 at 11) to observe the "storm."  The video makes clear that Jensen's objective was simply to advance up the steps, not to inflict injury.

## RELEASE IS WARRANTED

15.  The vast majority of charged Capitol riot men have been released.  A sampling of some detained include:  *United States v. McCaughey*, III, 21-CR-040-1, at 11 (D.D.C. Apr. 7, 2021) (government emphasizing defendant's "intent to injure" an officer who he had pinned against a door using a stolen riot shield as grounds for pretrial detention); *United States v. Pezzola*, 2021 WL 1026125, at *9 (Kelly, J.) (ordering pretrial detention for defendant "engaged in planning and coordination with other Proud Boys, including by arranging concealed means of communicating by radio during the riot"); *United States v. Chrestman*, 2021 WL 765662, at *2–3 (ordering pretrial detention for defendant who marched with the Proud Boys to the Capitol, urged the crowd to "take" the Capitol, and then "led his [four] co-conspirators in deliberate efforts to prevent Capitol Police from closing

the barriers").  Other detained defendants clearly sought to incapacitate and

injure members of law enforcement by striking them with fists, batons, baseball

bats, poles, or other dangerous weapons: *United States v. Webster*, 21-CR-208

(D.D.C.) (defendant struck officer with flagpole multiple times, tackled officer, and

pinned officer to ground while trying to remove officer's shield and gas mask);

Statement of Facts, ECF No. 1-1 & Min. Entry (Apr. 8, 2021), *United States v.

Sabol*, 21-CR-35-1 (D.D.C.) (defendant took officer's baton and dragged officer

down steps); Statement of Facts, ECF No. 1-1 & Min. Entry (Apr. 5, 2021), *United

States v. McKellop*, 21-CR-268 (D.D.C.) (defendant pushed officers back with his

hands, threw a bottle at another officer, and shoved flagpole into officer's face);

Statement of Facts, ECF No. 1-1 & Min. Entry (Mar. 10, 2021), *United States v.

Stager*, 21-CR-35-2 (D.D.C.) (defendant struck officer on the ground with flagpole);

Statement of Facts, ECF No. 1-1 & Min. Entry (Mar. 15, 2021), *United States v.

Foy*, 21-CR-108-1 (D.D.C.) (defendant lifted hockey stick above his head and

struck an officer lying on the ground multiple times); Statement of Facts, ECF No.

1-1 & Rule 5(c)(3) Docs., ECF No. 6, *United States v. Jenkins*, 21-CR-245 (D.D.C.)

(defendant threw nine items at officers, including three stick-like objects, a

wooden dresser drawer, and a flagpole); Aff. in Supp. of Crim. Compl. & Arrest

Warrant, ECF No. 1-1 & Min. Entry (Feb. 9, 2021), *United States v. Lang*, 21-CR-

53 (D.D.C.) (defendant swung bat at officers' shields); Statement of Facts, ECF

No. 1-1 & Min. Entry (Mar. 9, 2021), *United States v. Mellis*, 21-CR-206 (D.D.C.)

(defendant repeatedly struck or attempted to strike officers' necks between their

helmets and body armor). Jensen's actions are distinguishable from all of these cases, yet he remains behind bars with them – albeit – to protect the public safety.

16.   On the other hand, many defendants with charges that actually allege violence have been released: See Statement of Facts (Jan. 7, 2021), ECF No. 1-1 & Min. Entry (Jan. 8, 2021), *United States v. Leffingwell*, 21-CR-5 (D.D.C.) (defendant repeatedly punched officer with closed fist in attempt to push past wall of officers); Statement of Facts (Jan. 18, 2021), ECF No. 1-1 & Min. Entry (Jan. 19, 2021), *United States v. Gossjankowski*, 21-CR-123 (D.D.C.) (defendant activated taser within tunnel multiple times as he pushed towards the police line); Statement of Facts (Feb. 9, 2021), ECF No. 1-1 & Min. Entry (Feb. 17, 2021), *United States v. Blair,* No. 21-CR-186 (D.D.C.) (defendant struck an officer in the chest with a lacrosse stick; Statement of Facts (Jan. 13, 2021), ECF No. 1-1 & Min. Entry (Mar. 2, 2021), *United States v. Sanford*, 21-CR-86 (D.D.C.) (defendant hurled a fire extinguisher that struck one officer and ricocheted off two other officers' helmets); Statement of Facts (Feb. 16, 2021), ECF No. 1-1 & Min. Entry (Apr. 9, 2021), *United States v. Coffee*, 21-MJ-236 (D.D.C.) (defendant pushed a crutch into an officer's body at the archway to the tunnel and then charged at several officers in the tunnel with the crutch).

17.   Some defendants have been given favorable consideration by expressing remorse: See, e.g., *United States v. Cua*, 2021 WL 918255, at *7–8 (D.D.C. Mar. 10, 2021) (Moss, J.) (weighing defendant's deep remorse and regret in favor of pretrial release).  Cua climbed the scaffolding affixed to the observation

deck that had been constructed for President Biden's forthcoming inauguration and then headed toward the Capitol building. Cua breached the Capitol building. Upon entering the building, he marched through it carrying and twirling a black baton. Cua eventually made his way to the foyer of Senate Chamber. There, he and a group of others shoved aside an officer guarding the entrance, and then entered the Senate Chamber. Aside from his use of physical force and violence to gain entry to the Senate Chamber, he made a number of public posts which were very graphic.  His public Parler posts included the following:

December 19, 2021

On JAN 6th congress will open their blinds and see MILLIONS OF ANGRY #PATRIOTS. OPEN CARRY MISSON. If they vote for sleepy joe and commie KAMALA, we BREAK DOWN THEIR DOORS AND TAKE OUR COUNTRY BACK BY FORCE

January 1, 2021

I hear chatter of DC having "firearm checkpoints", where they will stop you, search your car (without a warrant) and arrest you for having a gun. Which is an unconstitutional felony in DC. Bring other weapons if you prefer, like pepper spray, tasers, baseball bats, whatever you want. Although may I remind you that that is EXACTLY what they want from us, to lay down our weapons and be sheep! They know they cannot control us if we are armed and dangerous! I don't know who needs to hear this, but they can't arrest all of us. Do not back down and do not be discouraged. Show up and be ready to fight. This really is out #1776. Please

echo to spread awareness.

January 7, 2021

The tree of liberty often has to be watered from the blood of tyrants. And the tree is thirsty.

Violent protests against the capital (NOT SMALL BUSINESS'S) are well within our constitutional rights

Dear Swamp Rats, The events at the capital were a reminder that WE THE PEOPLE are in charge of this country and that you work for us. There will be no 'warning shot' next time.

Everyone who works in congress is a traitor to the people and deserves a public execution.

*Id.* at 1–3. Although less public, his Instagram direct messages express similar, violent sentiments:

November 9, 2020

I'm trying to find an AR to buy under the table. Know anybody?

December 14, 2020

I don't want to sit here in GA and watch I want to fight

December 22, 2020

[T]his [January 6, 2021] could possibly be one of the most important days in

American history ... because we can storm the freaking senate/house ... That's why I keep saying to bring guns ... Holding signs is useless ... We have to forcefully take our freedom back on Jan. 6

January 7, 2021

In response to a message stating "You know if trump really doesn't get in because of the traitors all I can say is he exposed the swamp," Cua writes "If Trump doesn't get Im we will be back in DC for a blood bath"

January 8, 2021

Trump or not, our fight against the government is far from over ... I would lay down my life for him but I'm gonna keep fighting

January 9, 2021

I want a bloody war I'm ready to start shooting and I'm ready to die before I watch America crash and burn ... I'll be on the front lines ... I want to lock the swamp rat tyrants in the capital and burn the place to the ground

Dkt. 23-1 at 5, 6, 9, 12 (Ex. 1).

Cua's actions and posts are truly violent in nature.  However, his remorse was similar to Jensen's for having gone down the rabbit hole of conspiracy theories on the internet.  Judge Moss released him on conditions.

### THE LEGAL FRAMEWORK

18. In *Munchel*,  the D.C. Circuit remarked that "those who actually assaulted police officers and broke through windows, doors, and barricades, and

those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." Munchel, 2021 WL 1149196, at *8. Jensen engaged in none of these activities, and if Officer Goodman felt threatened as Jensen pushed ahead, this threat would fall at the very low end of the spectrum.[15]

19.  A finding of dangerousness must be predicated on a concrete determination that the defendant poses a continued, "identified and articulable threat to the community…" *Munchel*, 2021 WL 1149196, at *4. *Munchel* advises that the district court consider "the specific circumstances that made it possible, on January 6, for [the defendant] to threaten the peaceful transfer of power." Id. at *8.  In Jensen's circumstances, "the presence of the group," knowingly or unknowingly, impacted his "ability to obstruct and to cause danger to the community." Id. But in the end, his most forceful conduct was directed at advancing up the steps to observe what he believed was going to be the "storm," not toward inflicting injury.

20.  As outlined in his initial pleading, Jensen's trip out of the "rabbit hole" is complete.  Despite having managed to become the "Where's Waldo" of the Capitol riots, he remains memorialized as a silly passive observer.  By law, he is presumed innocent and under the Bail Reform Act presumed to be released on

---

[15] It would be improper to take into consideration other people's behavior during this incident, unless Jensen was aware of what they were doing and a part of a coordinated effort.  Again, Jensen was there on his own, with his silly "Q" shirt.

conditions.  In *Munchel*, the majority emphasized that the threat to public safety

must be continuing and prospective. Id. at *4.  The election is over, the leaders of

the charge on the Capitol are on the fringe-edge of the political spectrum, and "Q"

is missing in action (game over).

## CONCLUSION

The strongest emotion that is left in Jensen is the love for his family.  He

has voluntarily sought mental health treatment in the past and while

incarcerated, and he will do so if directed by Pre-Trial Services.  He has

maintained a stable relationship with his wife of over 20 years and been steadily

employed throughout that time period.  He is non-violent man who now

recognizes what happened to him.  Perhaps a little late, but better late than

never.  He asks that this Honorable Court release him pending trial or

disposition, both of which apparently are going to take much longer than the

routine criminal cases that pass through the U.S. District Court.

WHEREFORE, Mr. Jensen moves this Honorable Court to give him a chance

and release him on conditions pending resolution of his case.

Respectfully submitted,

_____
/s/
Christopher M. Davis #385582
Counsel for Douglas Jensen
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

18

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 21st day of June 2021.

_____/s/_____
Christopher M. Davis