UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-6 (TJK) |
| | : | |
| DOUGLAS AUSTIN JENSEN, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE

A mere thirty days after his release from the D.C. Jail, defendant Douglas Jensen was found alone, in his garage, using a WiFi-connected iPhone to stream news from Rumble.[1] When confronted about this obvious violation of his release conditions, defendant provided his Pretrial Services Officer with one excuse after another. First, he claimed that the phone belonged to his daughter. Jensen's daughter, however, later told Pretrial Services that she had gotten a new phone almost three weeks ago. Then, Jensen claimed that his wife – the same individual who swore, under oath, to notify the Court immediately if Jensen violates a condition of release – facilitated his violation by leaving the news on for him when she left for work in the morning. Finally, Jensen claimed not to know the password to the iPhone, only to later enter the password for his Pretrial Services Officer.

Jensen eventually admitted to his Pretrial Services Officer that in the previous week, he had spent two days watching Mike Lindell's Cyber Symposium regarding the recount of the presidential election.[2]

---

[1] *See* Drew Harwell, "Rumble, a YouTube Rival Popular with Conservatives, Will Pay Creators Who 'Challenge the Status Quo,'" Washington Post (Aug. 12, 2021), *available at* https://www.washingtonpost.com/technology/2021/08/12/rumble-video-gabbard-greenwald/ ("Rumble has emerged over the last year as one of the most prominent video sites for right-wing viewers and provocateurs, and it is seeking to bolster its image as a new online home for those who claim they've been censored by Big Tech. The site bans racism and hate speech but has contrasted itself with the Google-owned YouTube by refusing to remove 'medical misinformation,' including those casting doubt on vaccines during a pandemic that is surging in many states and has killed more than 4 million people around the world.").

[2] *See* Joseph Marks, "The Cybersecurity 202: My Pillow Cyber Symposium is Yet Another Font of Election Fraud Lies," Washington Post (Aug. 11, 2021), *available at* https://www.washingtonpost.com/politics/2021/08/11/cybersecurity-202-my-pillow-cyber-symposium-is-yet-another-font-election-fraud-lies/.

Jensen's conditions of release are unambiguous: he is prohibited from accessing the Internet, "*directly or indirectly (through devices belonging to others, or in public spaces)*." Dkt. 30, at 3 (emphasis added). He is prohibited from accessing or utilizing internet-capable devices, "including a cell phone." *Id.* And he is prohibited from learning the password to any family members' internet-capable devices. *Id.* And yet, despite swearing, under oath, to comply with all these conditions, Jensen wasted no time in violating this Court's orders.

In his bond motion, Jensen claimed that he had come "full circle" – that he felt "deceived" by QAnon's conspiracy theories, and that he "recogniz[ed] that he bought into a pack of lies." Dkt. 21 at 7. But Jensen's swift violation confirms what the Government and this Court suspected all along: that Jensen's alleged disavowal of QAnon was just an act; that his alleged epiphany inside the D.C. Jail was merely self-advocacy; and that, at the end of the day, Jensen will not abandon the misguided theories and beliefs that led him to menacingly chase U.S. Capitol Police Officer Eugene Goodman up the Senate staircase on January 6, 2021.

Jensen's claims of reform cannot be credited, nor can he be trusted to abide by this Court's orders. Jensen is already subject to the highest degree of supervision, which means there are no additional conditions of release that this Court can impose to protect the public from Jensen or to ensure compliance with the Court's release conditions. To allow Jensen to remain on pretrial release would be to repose trust in an undeserving individual who has already proven himself unwilling to modify, much less rethink, his behavior after January 6. Jensen remains a danger to the community and cannot be trusted by this Court to abide by any conditions of release.

**BACKGROUND**

Jensen was arrested in Iowa on January 8, 2021 pursuant to an arrest warrant issued in connection with a Criminal Complaint charging Jensen with, among other crimes, Obstructing a Law Enforcement Officer During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Dkt. 1.

On January 11, 2021, a federal grand jury in the District of Columbia returned a six-count Indictment charging defendant with violations of 18 U.S.C. § 231(a)(3) (Obstruction of a Law Enforcement

Officer During a Civil Disorder); 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building); 40 U.S.C. § 5104(e)(2)(A) (Violent Entry and Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). Dkt. 3.

Jensen had his initial appearance in the Southern District of Iowa on January 12, 2021. *See* Dkt. 14, at 5. The Government filed a motion to detain Jensen without bond pending trial, and a detention hearing was held on January 19. *Id.* at 6. On January 21, the court ordered Jensen released pending trial and imposed special release conditions. *Id.* at 10-17. The court stayed its ruling until January 27 to allow the Government an opportunity to appeal to this Court pursuant to 18 U.S.C. § 3145(a). *Id.* at 13.

On January 22, the Government filed a Motion for Emergency Stay and For Review of Release Order (hereinafter, the "Emergency Motion"). Dkt. 5. On February 10, the grand jury returned a seven-count superseding indictment, charging Jensen with five felonies and two misdemeanors. Dkt. 12. Specifically, the grand jury charged Jensen with violations of 18 U.S.C. § 231(a)(3) (Obstruction of a Law Enforcement Officer During a Civil Disorder); 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding); 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Unlawfully Entering and Remaining in a Restricted Building While Carrying a Deadly and Dangerous Weapon); 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building While Carrying a Deadly and Dangerous Weapon); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, and Picketing in a Capitol Building).

An arraignment and detention hearing were held before the Court on February 23. The Court ordered Jensen detained, finding that no condition or combination of conditions could reasonably assure the safety of any person and the community. The Court's detention order detailed the "gravely serious" nature and circumstances of the offense, including the fact that Jensen "allegedly travelled halfway across

the country . . . attended a rally in support of former President Trump, joined rioters by climbing through a broken window to enter the Capitol while armed with a knife, led a mob chasing Capitol Police Officer Eugene Goodman up a flight of stairs in a menacing fashion, threatened to take the officer's baton, and refused to obey the officer's lawful orders to stop and leave." Dkt. 15, at 3. The Court also highlighted certain troubling aspects of Jensen's history and characteristics, including the fact that his actions on January 6 were "motivated by conspiracy theories that, in Mr. Jensen's words, let him to be 'all about a revolution' against the lawful government of the United States." *Id.* at 4.

On April 9, a federal grand jury returned a second superseding indictment charging Jensen with aggravated assault rather than simple assault. Dkt. 17. Whereas simple assault is punishable by up to one year of imprisonment, aggravated assault is punishable by up to eight years' imprisonment. *See* 18 U.S.C. § 111(a)(1).

On June 7, Jensen filed a motion to revoke the Court's detention order. Dkt. 21. In his motion, Jensen claimed to have fallen "victim" to a "barrage of internet sourced info" and to "numerous conspiracy theories," including a theory, propounded by the "bizarre" QAnon, that the election had been stolen. *Id.* at 4, 6-7. Jensen lied to this Court by claiming to have distanced himself from those theories. Indeed, he even went so far as to claim that he felt "deceived, recognizing that he bought into a pack of lies." *Id.* at 7.

In its opposition to defendant's bond motion and at a June 24 bond hearing, the Government repeatedly highlighted Jensen's concerning relationship to QAnon and to other conspiracy theories. The Government described Jensen as a devout QAnon adherent whose unwavering devotion to "Q" led him to commit criminal acts on January 6, 2021. As the Government argued, "not only was defendant willing to harm a law enforcement officer for QAnon, but he was also willing to sacrifice his family, friends, job, and health for an unknown entity with whom he had only ever interacted via social media." Dkt. 24, at 7. The Government also highlighted various warnings that Jensen's family and friends had provided to FBI

about Jensen's QAnon addiction. *See id.* at 7-8. Overall, the Government argued that Jensen lacked good judgment, and that he could not be trusted to abide by any release conditions.

The Court ultimately granted Jensen's release on July 13, finding that certain strict conditions of release could be imposed in order to mitigate Jensen's future danger to the community. In so doing, the Court relied in part on Jensen's representations that he felt deceived by QAnon, that he recognized that he had "bought into a pack of lies," and that he had experienced a "wake-up call." *Id.* at 19. As the Court explained, "While I don't put too much weight on these representations, given how late they've come, and they are less persuasive given that they're through counsel, they do distinguish Mr. Jensen from many other detained January 6th rioters, and they do suggest that Mr. Jensen has come to understand that acting on conspiracy theories like QAnon can have terrible real-life consequences both for others and for him." Exh. 1, at 6. Recognizing the corrupting and dangerous influence that conspiracy theories hold over Jensen, the Court specifically prohibited Jensen from accessing the Internet "directly or indirectly" through any devices belonging to himself or others. *Id.* at 26; Dkt. 30, at 3. The Court further prohibited defendant from utilizing any internet-capable devices, and required that all internet-capable devices in Jensen's household be password-protected from Jensen. *Id.* The Court pronounced these special conditions orally at the July 13 bond hearing, and personally warned Jensen that his release "could be revoked and you would be detained at that point very likely until the case is completely resolved." Exh. 1, at 30.

Jensen swore, under oath, to obey these conditions. *Id.* at 40. Additionally, Jensen's wife, April Jensen, swore under oath that she would agree to supervise Jensen, and that she would notify the Court immediately if Jensen violated a condition of release. *Id.* at 27-28. Indeed, the Court specifically confirmed that Ms. Jensen understood that the "typical outcome if someone violates their conditions of release in a material way is that they're just jailed again pending trial." *Id.* Jensen was ultimately released from the D.C. Jail on July 14, 2021. Dkt. 31.

5

Less than one month later, Pretrial Services Officer Brandon Brown discovered Jensen, inside his garage, listening to the news on Rumble via a WiFi-connected iPhone. Dkt. 32 at 3. Jensen admitted to Officer Brown that he had possessed the iPhone for the past two weeks. *Id.* Jensen further admitted that he had spent two days during the past week watching a cyber symposium on the recount of the presidential election. *Id.*

On August 16, 2021, the Pretrial Services Agency for the District of Columbia ("PSA") filed a violation report seeking "[p]rogram [r]emoval" for Jensen. Based on conversations with PSA, the Government understands PSA to be seeking the revocation of defendant's pretrial release.

## ARGUMENT

### I. Applicable Authority

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Specifically, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is . . . clear and convincing evidence that the person has violated any other condition of release . . . [and that] the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

### II. Jensen is Unlikely to Abide by Any Condition or Combination of Conditions of Release

Jensen managed to violate one of the most difficult-to-enforce conditions in the most egregious way imaginable. He has proven that not even six months in jail will deter him from returning to the conspiracy theories that led him to commit an assault against a federal officer on January 6, 2021. Contrary to what Jensen claimed at his bond hearing, he is still very much bought into QAnon's "pack of lies." *See* Dkt. 21 at 7. Indeed, the Court need look no further than Jensen's virtual attendance at a symposium dedicated to challenging the legitimacy of the 2020 electoral election to know that Jensen will continue to let his loyalties to certain conspiracy theories prevail over his obligations to this Court and his family.

Jensen's violation is doubly concerning because it exposes Ms. Jensen as an unsuitable and untrustworthy custodian.  Indeed, by the defendant's own account, Ms. Jensen left the iPhone on for the defendant when she went to work on August 13, thereby facilitating his violation.  Thus, even if the Court were inclined to keep defendant on pretrial release, there are no suitable third-party custodians to supervise Jensen.

Jensen was given an extraordinary second chance when he was released from pretrial detention. He squandered that chance by swiftly violating this Court's orders in order to return to the same pattern of conduct that led him to commit an aggravated assault on January 6, 2021.  He does not appreciate the gravity of the situation he is in, and he does not respect this Court's authority.  For these reasons, the Government respectfully requests that this Court revoke Jensen's pretrial release.

    Respectfully submitted,

    CHANNING PHILLIPS
    Acting United States Attorney
    D.C. Bar No. 415793

By:    /s/ *Hava Arin Levenson Mirell*
    Hava Arin Levenson Mirell
    Assistant United States Attorney
    Detailee
    CA Bar No. 311098
    United States Attorney's Office
    312 N. Spring St., Suite 1100
    Los Angeles, CA 90012
    Phone: (213) 894-0717
    Hava.Mirell@usdoj.gov