UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**   : | |
| : | |
| v.   : | |
| : | Case Number 21-cr-6 (TJK) |
| **DOUGLAS AUSTIN JENSEN,**   : | |
| : | |
| **Defendant.**   : | |

## GOVERNMENT'S OPPOSED MOTION TO SEAL VIDEO EXHIBIT

The United States of America respectfully moves this Court to issue an Order directing that the outlined exhibit – a 31-second clip from U.S. Capitol Building closed circuit video footage – proposed to be submitted to the Court in advance of a hearing on the revocation of defendant's pretrial release be placed under seal until further order of the Court.  This exhibit has been provided to defense counsel subject to a protective order entered by this Court.   In support of its motion, the Government submits that the common-law right of access balancing test weighs in favor of preventing the public from making copies and distributing the video at this time.   The defense opposes this request.

## BACKGROUND

Douglas Jensen is charged in a seven-count second superseding indictment with violating 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. §§ 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting); 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or

Dangerous Weapon); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). (Dkt. 17). On July 13, 2021, the Court granted defendant's motion to revoke the detention order and released defendant under high-intensity supervision. (Dkts. 30, 31). The Court also prohibited the defendant from accessing the Internet and from utilizing any internet-capable devices. (Dkt. 30). On August 19, 2021, the Government filed a motion to revoke the defendant's pretrial released based on defendant's violation of these Internet conditions. (Dkt. 34). A hearing on the Government's revocation motion is scheduled for September 2, 2021 at 10:30 a.m.

As set forth in the attached declaration from the General Counsel for the U.S. Capitol Police, the U.S. Capitol Police has a strong privacy interest in the videos from its closed-circuit video system. *See* Declaration of Thomas A. DiBiase (hereinafter "DiBiase Decl."). These videos were provided to the Department of Justice by the U.S. Capitol Police – a Legislative Branch agency – under specific conditions, including that the materials not be disseminated outside of a protective order unless necessary to satisfy the Government's discovery obligations or for use as evidence in the prosecution of a criminal offense.

**ARGUMENT**

The Government recognizes that the common-law right of access applies to evidence submitted at a revocation hearing. *Cf. United States v. Graham*, 257 F.3d 143, 151-53 (2d Cir. 2001); *United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127, at *5-6 (D.D.C. Mar. 17, 2021) (Howell, C.J.); *see also United States v. Snyder*, 187 F. Supp. 2d 52, 64 (N.D.N.Y. 2002) (finding that subpoenaed documents pertaining to drug tests for purposes of a revocation hearing were "judicial documents for public accessibility purposes").

To be sure, the common-law right of access to judicial records does not apply to all items filed with a court. *See SEC v. Am. Int'l Group*, 712 F.3d 1, 3 (D.C. Cir. 2013). Rather, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *Id.* (quoting *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997)). When, for example, items "are 'intended to influence' the court and the court 'ma[kes] decisions about them[,']" *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017)), then they are judicial records. Here, the Government does not dispute that the video it intends to submit as an exhibit at the defendant's upcoming revocation hearing is a judicial record. *See, e.g.*, *Graham*, 257 F.3d at 151-53 (finding that tapes played at a detention hearing were judicial records); *Jackson*, 2021 WL 1026127, at *4-5 (same as to videos); *Snyder*, 187 F. Supp. 2d at 64 (subpoenaed documents from a drug company regarding a defendant's positive drug sweat patch were judicial records).

The D.C. Circuit has consistently employed a multi-factor balancing test when determining whether the common-law right of access to judicial records requires those records to be made available to the public for copying and inspection. Applied here, that test weighs in favor of allowing the Government to submit the video under seal at this time.

Because the video is a judicial record, "there is a 'strong presumption in favor of public access'" to them. *Leopold*, 964 F.3d at 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). However, "that presumption may be outweighed by competing interests." *Id.* To weigh those competing interests, the D.C. Circuit uses the six-factor "*Hubbard* test" that "'has consistently served as [its] lodestar' for evaluating motions to seal or unseal judicial records[.]" *Id.* (quoting *MetLife*, 865 F.3d at 666). Thus, in this jurisdiction, "when a court is

3

presented with a motion to seal or unseal, it should weigh: '(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.'" *MetLife*, 865 F.3d at 665 (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

The requisite balancing under the six-factor *Hubbard* test weighs in favor of allowing the Government to submit the videos under seal at this time. As to the need for public access, this first factor does not weigh in favor of public access for many of the reasons discussed by the D.C. Circuit in *Hubbard* itself. The Government's motion to file videos under seal "does not involve access to the courtroom" or "to documents which have been introduced as evidence of guilt or innocence in a trial[.]" *Hubbard*, 650 F.2d at 317. Moreover, "[t]he public in this case [will have] access, *inter alia*, to the courtroom proceedings . . . , to the memoranda filed by the parties . . . , [and] to the trial judge's memorandum decision[.]" *Id.* at 317-18. The public thus has minimal need to take the additional step of copying and reproducing the videos at issue. *See generally CNN, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021) ("A district court weighing the first factor should consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit.").

As for the second factor—the extent of previous public access—the video that the Government seeks to file under seal has not, to the Government's knowledge, previously been made public. This fact weighs heavily in favor of allowing the video to be filed under seal. *See*

4

*id.* at 119; *Hubbard*, 650 F.2d at 318-19.

With regard to the third factor, the fact that the Government has objected to the video's public dissemination and seeks to file it under seal weighs against disclosure. *See Nat'l Children's Ctr.*, 98 F.3d at 1410 (finding that "the fact that the Center has objected" weighed against public disclosure); *Hubbard*, 650 F.2d at 319 ("the strength with which a party asserts its interests is a significant indication of the importance of those rights to that party").

Significantly, the fourth and fifth factors weigh heavily in favor of allowing the video to be filed under seal. As discussed in the attached declaration from the General Counsel for the United States Capitol Police, the U.S. Capitol Police has a strong privacy interest in the videos from its closed-circuit video system. *See* DiBiase Decl. ¶ 1. Access to that video system "is strictly limited," and "[t]he disclosure of any footage" from the closed-circuit video cameras is likewise "strictly limited and subject to a policy that regulates the release of footage." ¶ 4. The release of any footage must be authorized by the Capitol Police Department's second-highest officer, and the Capitol Police's General Counsel's office "has consistently taken a restrictive view of releasing camera footage in cases other than serious crimes or national security." ¶¶ 4, 6. Even when the Capitol Police provides video footage in criminal cases, it does so pursuant to a protective order that prevents it from being reproduced or further disseminated. ¶ 7. Here, the Capitol Police's concern with the release of video from its closed-circuit camera system is particularly acute, given the possibility "that providing unfettered access to hours of extremely sensitive information to defendants who have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol

again." ¶ 14. The Capitol Police thus has a strong privacy interest that weighs against further public dissemination of the videos from its closed-circuit video system. *See generally CNN*, 984 F.3d at 120 ("a district court weighing the fourth *Hubbard* factor should consider whether secrecy plays an outsized role in the specific context"); *MetLife*, 865 F.3d at 672 ("continued confidential treatment of sensitive information is still possible under *Hubbard*"); *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001) (explaining that a statute and the "regulations interpreting the statute create an extraordinarily strong privacy interest in keeping the records sealed"); *Hubbard*, 650 F.2d at 315-16 ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings . . . to guard against risks to national security interests").

For many of the same reasons just discussed, the Capitol Police may suffer serious potential prejudice if videos from its closed-circuit camera system are released publicly so that they may be repeatedly copied, studied, and further disseminated. The public's ability "to copy or disseminate such footage would provide the defendants or others to whom it is released with a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and areas (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." DiBiase Decl. ¶ 16. And even if that possibility does not exist with respect to the specific videos at issue, the public dissemination of numerous such videos may, "in the aggregate," create just the risk the Capitol Police seek to avoid. *Id.* ¶ 16 & n.6. The possibility of prejudice to the Capitol Police's ability to protect the U.S. Capitol and the Members of Congress who work there thus weighs against public access and dissemination of the videos in question. *See CNN*, 984 F.3d at 120 ("a district court weighing the fifth *Hubbard* factor should

consider the dire consequences that may occur); *Dhiab v. Trump*, 852 F.3d 1087, 1096-97 (D.C. Cir. 2017) ("The government's expert judgment was that militants could study the recordings repeatedly and slowly, looking for 'patterns' of 'mistakes' not identifiable from firsthand experience or written descriptions. Even if the recordings contained no new information, the government thus demonstrated good cause for sealing them." (citation omitted)); *Hubbard*, 650 F.2d at 315-16 (noting that materials may be sealed "to guard against risks to national security interests"); *cf. Robinson*, 935 F.2d at 291 ("evidence that the release of a plea agreement may threaten an ongoing criminal investigation, or the safety of the defendant and his family, may well be sufficient to justify sealing a plea agreement").   Indeed, several judges in this District have recently sealed videos from the Capitol Police's closed-circuit video system, finding in several cases that "there are reasonable grounds to believe that the disclosure of such materials could jeopardize national security[.]"   4/1/21 Order (ECF No. 25), *United States v. Sandlin*, No. 21-cr-88-DLF; *see also* 3/25/21 Order (ECF No. 18), *United States v. DeGrave*, No. 21-cr-90-PLF (same); 3/3/21 Order (ECF No. 37), *United States v. Munchel, et al.*, No. 21-cr-118-RCL (granting motion to seal exhibits submitted in support of detention motion).

      Here, the Capitol Police's significant privacy interests and the possibility of harm to the security of the U.S. Capitol that may arise from the public dissemination of the videos outweighs the public's common-law right of access and justifies the sealing of the proposed exhibit.   As the D.C. Circuit recognized in *Dhiab*, even where video recordings "contain[ ] no new information" than that already made public, the government may have an interest in preventing the public release of those videos, where they may be "stud[ied] . . . repeatedly," thus revealing vulnerabilities and security weaknesses "not identifiable from firsthand experience or written descriptions."   852

F.3d at 1096-97. That is precisely the Capitol Police's concern here. *See* DiBiase Decl. ¶¶ 14-16. Thus, under the common-law right of access balancing test endorsed by the D.C. Circuit, the proposed exhibit may be sealed, at least temporarily, to "guard against risks to national security interests." *Hubbard*, 650 F.2d at 315-16 (citing, among other cases, *United States v. Washington Post*, 403 U.S. 943 (1971) (court permitting filing under seal of materials claimed to affect national security)).

### III.  CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the proposed video exhibit be placed under seal until further order of the Court.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By: _____/s/_____
HAVA MIRELL
Assistant United States Attorney
Detailee
U.S. Attorney's Office
312 N. Spring St., Suite 1100
Los Angeles, CA 90012
Phone: (213) 894-0717
E-mail: Hava.Mirell@usdoj.gov

Date: September 1, 2021