# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 21cr0006 (TJK)** |
| | : | |
| **DOUGLAS AUSTIN JENSEN,** | : | |
| **Defendant.** | : | |

## MOTION TO DISMISS COUNT TWO
## FOR FAILURE TO STATE AN OFFENSE AND FOR
## VAGUENESS[1]

Douglas Jensen, by his undersigned counsel, hereby respectfully moves pursuant to FED.R.CRIM.PROC. 12(b) to dismiss Count Two of the Indictment (Dkt. 17). Count Two charges Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 USC §§ 1512(c)(2) and 2.

Count Two fails to state an offense. Section 1512(c)(2) makes it illegal for a person to otherwise corruptly obstruct, influence, or impede an official proceeding. The statutory language, its legislative history, and legal precedent reflect that § 1512(c)(2) criminalizes tampering with witnesses and information to be presented at an official proceeding. But the Indictment does not allege that Mr. Jensen did any such thing. Instead, the Indictment appears to allege that Mr. Jensen's presence within the Capitol, after the Congressional proceedings had been suspended, obstructed the Congressional proceeding in violation of § 1512(c)(2).

---

[1] This motion is largely a compilation of several other motions pending litigation before other Judges in this District.

No case brought under §1512(c)(2) supports such a broad reading of the "otherwise" language in the statute. *See Yates v United States,* 574 U.S. 528 (2015) (holding that a "tangible object" within §1519 (a related obstruction provision) must be one used to record or preserve information as that is the reach of the statute); *compare also* 18 U.S.C. § 1507 (prohibiting demonstrations in or near a federal court building or the residence of a judge, juror or court official).  Notwithstanding the Indictment, §1512(c)(2) does not criminalize participation in a demonstration (peaceful or disorderly), no matter its intent or effect.

As an independent basis, Count Two must be dismissed as the terms "corruptly" and "otherwise" in § 1512(c)(2) are void for vagueness, facially and as applied, in violation of the Due Process clause and cannot support the charges in Count Two under this Circuit's decision in *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir.1991), *cert. denied,* 506 U.S. 1021 (1992) and other legal precedents.

## INTRODUCTION

When activity that falls within the shadow of the First Amendment is alleged to be criminal, courts are required to apply the strictest standards of judgment in ensuring that only intentional criminal activity is prosecuted and not constitutionally protected actions, beliefs or associations. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982) (boycott activity, which was not itself violent, that resulted in the loss of business profits was constitutionally protected); *Noto v. United States*, 367 U.S. 290, 299-300 (1961) (requiring "rigorous standards of proof" in Smith Act prosecutions).

There can be no dispute that circumstances surrounding every offense charged in this case involve the political process and the role and activities of thousands of Americans, including Mr. Jensen in that process. On January 6, 2021, then-President Donald Trump had summoned his supporters to Washington, D.C. for a political rally to be held at the Ellipse near the White House. Once at the podium, President Trump told the persons assembled at the rally to walk to the Capitol and make their voices heard by Congress.[2]

When individuals associate together to advance a shared political objective, this activity is presumptively protected by the First Amendment to the United States Constitution. *See Texas v. Johnson,* 491 U.S. 397, 408-09 (1989) (a principal "function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger"). In reversing a conviction for flag-burning as "expressive conduct" within protection of the First Amendment, the Supreme Court considered that the incident took place during a demonstration "to protest the policies of the Reagan administration" while President Reagan was being renominated at the Republican National Convention held in Dallas in 1984. *Id.* at 399. Notably for purposes of the instant case, the Supreme Court rejected the argument

---

[2] Among other things, President Trump told the assembled crowd: "We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated. . . . I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard." Washington Post, 2/10/21, "When did the Jan. 6 rally become a march to the Capitol?"
https://www.washingtonpost.com/politics/2021/02/10/when-did-jan-6-rally-become-march-capitol/

propounded by Texas that the breaches of the peace by other demonstrators nullified the flag burner's First Amendment rights. *Id.* at 408. As set out in the Indictment and in the terabyte quantities of discovery produced by the United States, Mr. Jensen came to Washington, D.C. to attend a political rally near the White House. During his time in Washington, D.C., Mr. Jensen did not destroy any property and did not injure anyone. He did not steal or take away any documents or other property belonging to members of Congress. He did not delete any social media posts or other communications and, in fact, voluntarily turned over his cell phone to the FBI. While in DC, he did not act corruptly, *i.e.*, he did not accept or pay any bribes; he did not threaten or harm anyone; he did not lie to authorities; and he did not encourage anyone to lie to authorities. Mr. Jensen's activities while in DC are protected by First Amendment freedoms – of speech, of association, and of assembly to petition the Government for redress of grievances.

## THE STATUTE

**18  U.S.C. § 1512.  Tampering with a witness, victim, or an informant**

(c) Whoever corruptly–

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

## ARGUMENT

### I.   Congress Did Not Bury a Broad Obstruction Prohibition that Reaches First Amendment Protected Demonstrations in § 1512(c)(2) by Using a Vague Term Such as "Otherwise."

Section 1512(c)(2) was enacted as part of the Sarbanes–Oxley Act of 2002, P.L. 107-204. The Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States,* 574 U.S. 528, 535–36 (2015). Nothing in the statutory language or the legislative history supports the notion that Congress enacted § 1512(c)(2) to criminalize the disruption of a Congressional proceeding by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become.

Congress certainly knows how to criminalize in explicit terms demonstrations or violent conduct that interferes with proceedings. For example,18 U.S.C. § 1507 makes it illegal to picket or parade near a federal courthouse with the intent to interfere with a proceeding.[3]  Similarly, Congress knows how to criminalize threats or violence intended to interfere with a proceeding or with certain types of congressional hearings as it has in 18 U.S.C. §

---

[3] In pertinent part, § 1507 provides:

Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building or residence, shall be fined under this title or imprisoned not more than one year, or both.

1505.[4]  Neither of those statutes reach the conduct charged in this case.

It is clear that if Congress had wanted to criminalize the conduct charged in the Indictment, it could have done so by expanding § 1507 to include picketing at the Capitol.  Or by extending §1505 to all sorts of Congressional proceedings and not just those engaged in investigations. However, there are valid reasons why Congress limited §§ 1505 and 1507 as it did. Unlike judicial proceedings referenced in § 1507 and Congressional committees engaged in investigative activities, extending those provisions to the political work of Congress would surely run afoul of the First Amendment. The D.C. Circuit has explained the practical implications of the political nature of Congressional activities to obstruction statutes:

> to assert that all endeavors to influence, obstruct or impede the proceedings of congressional committees are, as a matter of law, corrupt – would undoubtedly criminalize some innocent behavior. Unlike courts of law covered by section 1503, congressional committees are part and parcel of a political branch of government and therefore serve wide-ranging political functions not limited to a search for truth in accordance with formal rules. They may also have a far-flung investigative scope and evoke legitimate political jousting between the executive and legislative branches. No one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees. An executive branch official, for example, might call the chairman of a congressional committee convened to investigate some wrongdoing and say, "We both know this investigation is really designed to embarrass the President (or a Senator), not to investigate wrongdoing. Why don't you call it off?" The official surely intends to obstruct or impede the inquiry, but it does not necessarily follow that he does so corruptly. Similarly, a political

---

[4] In pertinent part, § 1505 provides:

Whoever corruptly, or **by threats or force**, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or **the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress**

activist might contact his representative and tell her that unless she stops spending her time pursuing a certain investigation rather than some other legislative endeavor, the activist's group will oppose her reelection. Again, the activist is endeavoring to impede or obstruct the investigation but is not necessarily doing so corruptly.

*United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990).[5]

In the face of these clear statutory provisions enacted by Congress in §§ 1505 and 1507, this Court should not broaden the reach of § 1512 as the Indictment in this case would require. As the Supreme Court has explained,

> [Courts] have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." We do not believe that uttering false statements to an investigating agent – and that seems to be all that was proved here – who might or might not testify before a grand jury is sufficient to make out a violation of the catchall provision of § 1503.

*United States v. Aguilar*, 515 U.S. 593, 600 (1995) (internal citations omitted).

Count Two in the instant case charges a violation of § 1512(c)(2), a catch-all provision that reaches conduct that "otherwise" obstructs an official proceeding. Section 1512(c)(2) is contained within Chapter 73 of the United States Code which defines Obstruction of Justice offenses, *see, e.g.,* 18 U.S.C. § § 1501-1521. Section 1512 is titled "Tampering with a witness, victim or an informant." Other than the cases recently brought in this district, arising out of the events that occurred on January 6, 2021, no reported cases prosecuted under § 1512(c)(2), since its passage

---

[5] This opinion was withdrawn and superseded in part on rehearing by *United States v. North,*
920 F.2d 940 (D.C. Cir. 1990).

in 2002, involve a claim that demonstrations or rowdy crowds who disrupted or caused the suspension of an official proceeding committed an obstruction offense under § 1512(c)(2). Nor does it appear that the United States has prosecuted other demonstrators, who have caused the suspension or disruption of congressional hearings under § 1512(c)(2).[6]

The Supreme Court has rejected the broad reading of "otherwise" that the Government seeks to adopt in the instant case. In *Yates v. United States*, the majority rejected the government's use of a Sarbanes-Oxley anti-shredding law to prosecute a fisherman for missing fish. In *Yates*, prosecutors sought to broadly define the term "tangible object."   Justice Ginsburg wrote, "we resist reading §1519 expansively to create a coverall spoliation of the statute, advisable as such a measure might be. Leaving that important decision to Congress, we hold that 'tangible object' within 1519's compass is one used to record or preserve information." *Yates v. United States,* 574 U.S. at 549. Similarly, here, this Court should not expansively read "otherwise" in § 1512(c)(2) to include within the reach of the statute the actions of persons engaged in political demonstrations. Congress could not possibly have intended to include "political demonstrations" within the scope of the phrase "otherwise." No matter how disruptive, political

---

[6] Demonstrators often disrupt congressional proceedings but there is no evidence that they have been charged with 20-year obstruction offenses under § 1512(c)(2). *See, e.g.,* "Protesters Disrupt Senate Hearing on Health Care" at https://www.youtube.com/watch?v=prtYKvO05A8; "Capitol Police Drag Disabled Trumpcare Protesters from Wheelchairs, Make 43 Arrests" at https://patch.com/us/white-house/watch-capitol-cops-drag-disabled-trumpcare-protesters-wheelc hairs-across-floor (the arrestees were charged with misdemeanors under D.C. Code §22-1307); "Extinction Rebellion protesters glue themselves to doors to confront politicians at US Capitol" at https://www.theguardian.com/environment/2019/jul/23/extinction-rebellion-protesters-us-capitol -washington.

demonstrations have no relationship to witnesses or information to be presented at proceedings, the proper scope of § 1512 based on its statutory language and its legislative history.

A reading of the "otherwise" catchall provision in § 1512 that includes only conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion is consistent with the case law. *See, e.g., United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (defendant destroyed several USB drives and deleted data on his iPod)*; United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (upholding conviction of former Chicago police official for providing false answers to interrogatories in a civil lawsuit filed by a person seeking damages for mistreatment while in police custody)[7]; *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (making intentional false statements to court during a preliminary injunction hearing); *United States v. Phillips,* 583 F.3d 1261 (10th Cir. 2009) (affirming conviction of defendant who disclosed undercover officer's identity to impede a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir.2009) (making false statements to a grand jury); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (defendant "attempted to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir.2007) (§ 1512(c)(2) conviction affirmed where defendant sought to have others falsely claim ownership of a firearm); *United States v. Ring*, 628 F.

---

[7] The 7th Circuit explained that §(c)(1) "covers obstructive conduct in the form of physical destruction of documents and records" whereas § 1512(c)(2) covers "otherwise" obstructive behavior to include giving false statements in interrogatories relating to a civil lawsuit. *Burge*, *supra.*

Supp.2d 195, 225 (D. D.C. 2009) (false statements covered by § 1512(c)(2)).

Moreover, the allegation that Mr. Jensen entered the United States Capitol in an attempt "corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress" as alleged in the Indictment does not amount to a violation of § 1512(c)(2).

> Having used traditional tools of statutory interpretation to examine markers of congressional intent within the Sarbanes–Oxley Act and § 1519 itself, we are persuaded that an aggressive interpretation of "tangible object" must be rejected. It is highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind in a provision targeting fraud in financial recordkeeping.

*Yates,* 574 U.S. at 546.

As in Yates, it is highly improbable that Congress would have buried a broad general obstruction statute that reaches even the acts of demonstrators – a First Amendment protected activity – in § 1512(c)(2) by using a vague term such as "otherwise." This is especially true where § 1512(c)(2) does not even include a requirement that the person acted willfully, knowingly, or intentionally.

## II.  THE OBSTRUCTION STATUTE CHARGED IN COUNT TWO IS FACIALLY UNCONSTITUTIONAL

To comport with the Due Process clause, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In a case like this one where First Amendment rights are implicated, a court may declare

the law facially invalid. *See Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997).

> **A.    A Criminal Statute that Makes it Illegal for a Person to Corruptly Influence, Obstruct and Impede Congressional Inquiries is Facially Void for Vagueness**

In *United States v. Poindexter,* the D.C. Circuit held that the term "corruptly" as used in 18 U.S.C. § 1505, the obstruction statute under which Poindexter was prosecuted "is too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Poindexter,* 951 F.2d at 379.[8]  The statutory provision that *Poindexter* found too vague to pass constitutional muster is materially identical to the language in § 1512(c)(2) charged in Count Two.[9]

The D.C. Circuit explained that the term "corruptly"

> must have some meaning because otherwise the statute would criminalize all attempts to "influence" congressional inquiries – an absurd result that the Congress could not have intended in enacting the statute. . . ."[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." In particular, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which "policemen, prosecutors, and juries ... pursue their personal predilections."

> In response to certain different arguments that the defendant made unsuccessfully in North I, we quoted several modern dictionaries for

---

[8] Two years after the Poindexter decision, Congress amended the statue to provide a definition of "corruptly." *See* 18 U.S.C. § 1515(b) ("As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."). However, by its terms, the amendment only applies to § 1505 prosecutions.

[9] The obstruction statute in *Poindexter* provided: "*Whoever corruptly . . . influences, obstructs, or impedes* the due and proper administration of the law under which any pending proceeding is being had. . . ." *Poindexter*, 951 F.2d at 377. Here, § 1512(c)(2) provides "*Whoever corruptly* – . . . otherwise *obstructs, influences, or impedes* any official proceeding. . ."

definitions of the word "corrupt":

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which
> means "depraved, evil: perverted into a state of moral weakness or
> wickedness ... of debased political morality; characterized by bribery,
> the selling of political favors, or other improper political or legal
> transactions or arrangements." A "corrupt" intent may also be defined
> as "the intent to obtain an improper advantage for [one]self or
> someone else, inconsistent with official duty and the rights of others."
> . . .
> We must acknowledge that, on its face, the word "corruptly" is vague;
> that is, in the absence of some narrowing gloss, people must "guess
> at its meaning and differ as to its application."
> . . .
> The various dictionary definitions of the adjective "corrupt" quoted
> in North I do nothing to alleviate the vagueness problem involved in
> attempting to apply the term "corruptly" to Poindexter's conduct.
> "Vague terms do not suddenly become clear when they are defined by
> reference to other vague terms." Words like "depraved," "evil,"
> "immoral," "wicked," and "improper" are no more specific – indeed
> they may be less specific – than "corrupt." As used in § 1505,
> therefore, we find that the term "corruptly" is too vague to provide
> constitutionally adequate notice that it prohibits lying to the Congress.

*Poindexter*, 951 F.2d at 377–80.

Nothing in the legislative history of the act or legal precedents sufficiently
narrows the term "corruptly" to pass constitutional muster especially in the context
of First Amendment activities. The term "otherwise" is even more facially vague. If
otherwise includes the entire universe of conduct, then it is facially vague and
unconstitutional. A penal statute that contains facially vague terms is
unconstitutional.

### B.    Section 1512(c)(2) is Unconstitutional as Applied to Mr. Jensen's Conduct.

Even were the Court to consider the legislative history of § 1512(c) or the
term "corruptly" as applied in this case, the statute is still unconstitutionally vague

as to Mr. Jensen. As quoted above, the pertinent law interpreting the elements of §
1512(c)(2) define "corruptly" to include making false statements or encouraging
others to do so; falsifying documents; or destroying evidence. But none of those
circumstances are alleged in this case. Another common definition of "corruptly"

> means that in acting, the defendant aimed to obtain an "improper
> advantage for [himself] or someone else inconsistent with official
> duty and rights of others." Then someone who influences another to
> violate his legal duty has not acted corruptly if his purpose is, for
> example, to cause the enactment of legislation that would afford no
> particular benefit to him or anyone connected with him.

*Poindexter*, 951 F.2d at 385- 86 (internal citations omitted). But again, as applied
to the Indictment in this case, there is no allegation that Mr. Jensen acted to gain
an "improper advantage" for himself or anyone connected with him; or that he
paid or received a bribe or a gratuity.

Moreover, as the Indictment is drafted, the term "otherwise" is limitless,
has no textual or other constraints and therefore fails to give fair notice. The
charges are not limited to other documents, by reference to § 1512(c)(1). The
charges are not limited by reference to the title of §1512 to "[t]ampering with a
witness, victim, or an informant." The charges are not limited to false statements,
self-dealing, or shredding of evidence by reference to corporate fraud and
accounting scandals that impelled passage of the Sarbanes Oxley Act. Nor does
case law give any hint that "otherwise" could reach actions by persons engaged in
a political demonstration.

As it relates to 18 U.S.C. § 1512(c) — the statute that Mr. Jensen allegedly
violated as set forth in Count Two — the court in *United States v. McGarrity*, 669

F.3d 1218 (11th Cir. 2012), held that an indictment for obstruction under that section is likewise insufficient when it fails to specify what "official proceeding" was allegedly obstructed. *Id.* at 1238–40. In that case, the defendants were charged by indictment with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c). *Id.* at 1238. Likewise, the First Circuit found that an indictment's failure to identify the official proceeding involved in a violation of Title 18, United States Code, Section 1512(a)(1) failed to state an offense. Uni*ted States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985). "The indictment in the instant case did not identify *any* proceeding in which defendants were allegedly attempting to influence Watson's testimony. ... Crucial to preparation of any defense to a charge under the statute is at least some indication of the identity of the proceeding in which the defendant tried to influence testimony. The indictment at issue here presented no such indication, and as such it did not sufficiently apprise the defendant[s] of what [they] must be prepared to meet." *United States v. Murphy*, 762 F.2d at 1154 (1st Cir. 1985) (internal quotation marks omitted).[10]

Finally, even if the indictment had identified the certification of the electoral count as the as the official proceeding that was obstructed, Count Two would fall for failure to state an offense. No court has ever interpreted an "official

---

[10] *Cf, United States v. Mostofsky*, No. CR 21-138 (J. Boasburg), 2021 WL 3168501, at *4 (D.D.C. July 27, 2021) (superseding Indictment charged that the defendant "attempted to, and did corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, *Congress' certification of the Electoral College vote*") (emphasis added).

proceeding" as that term is used in Section 1512(c) to apply to a legislative function such as the certification of the electoral college vote. More specifically, as set out *supra*, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of proceedings before Congress related to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence. It does not prohibit the obstruction of a proceeding before Congress like the certification of the electoral college vote, a proceeding wholly unrelated to the administration of justice. If the allegation is that Mr. Jensen obstructed the certification of the electoral college vote, that would not be a crime under 18 U.S.C. § 1512(c).

In sum, nothing in § 1512(c)(2) would have given fair notice to Mr. Jensen or to any person of common intelligence, that if he entered the United States Capitol for a short time, without injuring anyone or damaging any property while associated with others seeking to petition the Congress his conduct would run afoul of 18 U.S.C. § 1512(c)(2) and subject him to imprisonment for a term of 20 years.

## CONCLUSION

For all the above noted reasons, and any that may be presented at a hearing on this matter and that are fair and just, this Honorable Court should dismiss Count Two of the Indictment for failure to state an offense. In addition, Count Two should be dismissed because 18 U.S.C. § 1512(c)(2) is so vague that it fails to give fair notice to Mr. Jensen in violation of the Due Process Clause of the Fifth Amendment.

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Counsel for Douglas Jensen
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this day of 26th September 2021.

_____/s/_____
Christopher M. Davis