**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-6-TJK** |
| **v.** | : | |
| | : | |
| **DOUGLAS AUSTIN JENSEN,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO DEFENDANT DOUGLAS AUSTIN JENSEN'S**
**MOTION TO DISMISS COUNT TWO FOR**
**FAILURE TO STATE AN OFFENSE AND FOR VAGUENESS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to defendant Douglas Austin Jensen's Motion to Dismiss Count Two of the Indictment. (Dkt. 42 (hereinafter, "Motion" or "Mot.")). Count Two charges Jensen with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), arising from Jensen's actions on January 6, 2021, when he entered the U.S. Capitol building with a mob of rioters, intending to disrupt Congress's Certification of the Electoral College vote (the "Certification"), and when he assaulted, obstructed, and interfered with U.S. Capitol Police Officer E.G. while Officer E.G. was attempting to divert rioters away from the Senate Chamber. Jensen's motion should be denied because the Certification—which is required by the Constitution and governed by precise statutorily prescribed requirements—is an "official proceeding" as defined by § 1512(c)(2). In addition, § 1512(c)(2) is not unconstitutionally vague as applied to Jensen's conduct, which includes leading the breach of the Capitol as part of the January 6 mob.

Six judges in this district have rejected similar arguments made by January 6 defendants in various motions to dismiss. *See United States v. DeCarlo*, No. 21-CR-73 (Jan. 21, 2022 Minute Entry) (Howell, C.J.); *United States v. Hughes*, No. 21-CR-106, Dkt. 57 (Jan. 7, 2022) (Kelly, J.);

*United States v. Nordean*, No. 21-CR-175, Dkt. 263, 2021 WL 6134595 (D.D.C. Dec. 28, 2021) (Kelly, J.); *United States v. Montgomery*, No. 21-CR-46, Dkt. 87, 2021 WL 6134591 (D.D.C. Dec. 28, 2021) (Moss, J.); *United States v. Mostofsky*, No. 21-CR-138, Dkt. 88, 2021 WL 6049891 (D.D.C. Dec. 21, 2021) (Boasberg, J.); *United States v. Caldwell*, --- F. Supp. 3d ---, No. 21-CR-28, Dkt. 558, 2021 WL 6062718, (D.D.C. Dec. 20, 2021) (Mehta, J.); and *United States v. Sandlin*, --- F. Supp. 3d ---, No. 21-CR-88, Dkt. 63 2021 WL 5865006 (D.D.C. Dec. 10, 2021) (Friedrich, J.).  For the reasons set forth in those well-reasoned and thorough opinions, and for the additional reasons set forth below, this Court should deny the defendant's motion.

## PROCEDURAL HISTORY

On January 11, 2021, the Grand Jury returned an indictment charging Jensen with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Assaulting, Resisting, or Impeding Certain Officers or Employees, namely, U.S. Capitol Police Officer E.G., in violation of 18 U.S.C. § 111(a)(1) (Count Two); Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) (Count Three); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2) (Count Four); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six).  Dkt. 3.

On February 10, 2021, the Grand Jury returned a superseding indictment adding, as Count Two, the charge of Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  Dkt. 12.  The superseding indictment also promoted the § 1752 offenses from misdemeanors to felonies based on Jensen's possession of a deadly and dangerous weapon,

namely, a knife, when he entered and engaged in disorderly conduct inside the Capitol Building. *Id.*

On April 9, 2021, the Grand Jury returned a second superseding indictment slightly modifying the language in the § 111(a)(1) charge relating to Jensen's assault of Officer E.G.  *See* Dkt. 17 (Count Three).

On September 26, 2021, Jensen filed the instant motion to dismiss Count Two of the Second Superseding Indictment.  Dkt. 42.

On November 10, 2021, the Grand Jury returned a third superseding indictment modifying the language in Count Two to specify that the "official proceeding" that Jensen attempted to corruptly obstruct, influence, and impede was Congress's Certification of the Electoral College vote, as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.  Dkt. 50.

## LEGAL STANDARD

An "indictment's main purpose is to inform the defendant of the nature of the accusation against him." *United States v. Ballestas*, 795 F.3d 138, 148-49 (D.C. Cir. 2015) (citation omitted). A defendant may move to dismiss an indictment or count for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  Because dismissal of an indictment "directly encroaches upon the fundamental role of the grand jury," however, "dismissal is granted only in unusual circumstances."  *Ballestas*, 795 F.3d at 148 (internal quotation marks omitted). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.  *Id.*

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment.  The rule states, in relevant part, that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1).

Section 1512(c)(2) of Title 18 of the United States Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."  The "Definitions" provision, 18 U.S.C. § 1515, states that "[a]s used in section[] 1512 . . . the term 'official proceeding' means":

> (A) a proceeding before a judge or court of the United States … or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency which is authorized by law; or
> (D) a proceeding involving the business of insurance … before any insurance regulatory official or agency….

18 U.S.C. § 1515(a)(1).

## ARGUMENT

Jensen's various challenges to the indictment lack merit.  First, the Joint Session's certification of the Electoral College vote is an "official proceeding" for purposes of § 1512(c)(2), and it has statutorily mandated features that satisfy even Jensen's atextual and inappropriately narrowed definition of that term.  Second, § 1512(c)(2) applies to the obstructive conduct that Jensen committed on January 6, 2021, including illegally entering and occupying the Capitol as part of a mob and assaulting, obstructing, and interfering with a U.S. Capitol Police Officer.  Third, § 1512(c)(2) is not unconstitutionally vague, facially or as applied to Jensen. Finally, the First Amendment does not insulate Jensen's unlawful acts from prosecution.

## I.      The Certification of the Electoral College Vote is an "Official Proceeding"[1]

Jensen first argues that Count Two fails to state an offense because the Joint Session of Congress convened for the Certification is not, as a matter of law, an "official proceeding" under § 1512(c)(2).  (Mot. at 15).  An official proceeding as defined in 18 U.S.C. § 1515(a)(1) includes a "proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).  While "not every action taken within the walls of Congress" amounts to an official proceeding under that definition, "a joint session of Congress convened to verify and count the electoral vote for President and Vice President of the United States does."  *Montgomery*, 2021 WL 6134591, at *4.   Indeed, a "straightforward reading" of the "official proceeding" definition in § 1515 "easily reaches the Certification of the Electoral College vote."  *Caldwell*, 2021 WL 6062718, at *4.

The Certification of the Electoral College vote is an "official proceeding" because it is "akin to a formal hearing."  *Sandlin*, 2021 WL 5865006, at *3.  The formality built in the "official proceeding" definition in § 1515(a)(1) indicates that a proceeding should both "comprise part of the business of the enumerated body" and that the body in question "has convened in some formal respect for the purpose of conducting that business."  *Montgomery*, 2021 WL 6134591, at *5.  As applied to the "official proceeding" definition in § 1515(a)(1)(B), the proceeding "must involve a formal assembly or meeting of Congress for the purpose of conducting official business."  *Id.*; *accord id.* at *9 ("[T]he term 'official proceeding' refers to '[t]he business conducted by . . . [an]

---

[1] As a threshold matter, insofar as Jensen challenges the indictment for failing to identify the "official proceeding" that he intended to obstruct, this argument is moot.  (Mot. at 13-14).  Count Two of the third superseding indictment (Dkt. 42) specifies that the "official proceeding" that Jensen attempted to corruptly instruct was "Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18."

official body' that has formally convened for the purpose of conducting that business") (quoting *Proceeding*, Black's Law Dictionary (11th ed. 2019)).

The Certification indubitably involves a "formal" congressional assembly that conducts official business. Indeed, the formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Moreover, judges of this Court have found that while not all actions occurring before Congress equate to an "official proceeding" within the meaning of §§ 1512(c)(2) and 1515(a)(1), the certification of the Electoral College does. *See, e.g.*, *Nordean*, 2021 WL 6134595, at *5 ("[T]he certification is therefore a 'series of actions' that requires 'some formal convocation,' making it a 'proceeding before the Congress,' 18 U.S.C. §1515(a)(1)(B), and thus an 'official proceeding,' *id.* § 1512(c)(2)."); *Montgomery*, 2021 WL 6134591, at *4-6 (same); *Mostofsky*, 2021 WL 6049891, at *10 (concluding that the Certification of the Electoral College is an official proceeding within the meaning of 18 U.S.C. §§ 1515 and 1512(c)(2)); *Caldwell*, 2021 WL 6062718, at *4 ("The Certification of the Electoral College vote thus meets the definition of an 'official proceeding.'"); *Sandlin*, 2021 WL 5865006, at *4 ("The Joint Session thus has the trappings of a formal hearing before an official body.").

Required by law to begin at 1:00 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may

object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection.  *Id.*  And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall."  *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform").  The Electoral College vote Certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared."  *Id.*  In short, the Certification is a "proceeding before the Congress."  *See* 18 U.S.C. § 1515(a)(1)(B).[2]  It is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress.

Ignoring the definition set forth in § 1515(a)(1)(B), Jensen claims, without citing any supporting authority, that the "official proceeding" must "relate[] to the administration of justice such as a congressional committee investigating a violation of the law where witnesses are subpoenaed to appear and give testimony or to provide relevant evidence."  (Mot. at 15).  Jensen is wrong.  There is no requirement that an official proceeding have a fact-finding, testimonial, or

_____

[2] And to the extent that the use of the preposition "before" requires "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 113 (2019), the Certification of the Electoral College vote involves a "formal convocation" of Congress to assess the Electoral College vote and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.  *See, e.g.*, *Montgomery*, 2021 WL 6134591, at *9 ("The certification process undertaken pursuant to the Twelfth Amendment and the Electoral Count Act, 3 U.S.C. § 15, requires the Congress formally to convene to conduct official business, to consider objections, and to render a final decision.").

investigative purpose.  Moreover, even if such a requirement existed, the Certification would qualify because members of Congress were there to adjudicate challenges to the electoral college vote.

As Judge Mehta observed in *Caldwell*, "[h]ad Congress wished to criminalize under section 1512 only those acts that obstruct its adjudicatory, investigative, or legislative proceedings, it had a ready-made template for how to do so." 2021 WL 6062718, at *5.  Indeed, Congress would have needed to look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency.  *Id.* Section 1505 also expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees.  18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020).  If Congress could limit the obstruction prohibition under § 1505 to congressional investigations, it could have done so in the text of § 1515(a)(1)(B).  *See Russello v. United States,* 464 U.S. 16, 23 (1983) (refraining from concluding that "differing language in the two subsections has the same meaning in each").  But it did not.  Instead, Congress enacted broader language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in § 1505.  That broader definition includes the Electoral College vote Certification.  "The court must presume that Congress understood the prevailing statutory landscape when enacting section 1512(c)." *Caldwell,* 2021 WL 6062718, at *5 (citing *Garrett v. United States*, 471 U.S. 773, 793–94 (1985)); *see also Nordean*, 2021 WL 6134595, at *5 ("[I]f Congress wanted to define 'official proceeding' in a way that required something more like an adjudicative setting . . . it could have imposed the language it used in 18 U.S.C. § 1505. . . .  But Congress did not do so, and courts presume that choice was intentional.").

Jensen's narrowed reading of "official proceeding"—in essence, importing an extra-textual "quasi-judicial" requirement—would undercut the broad statute that Congress enacted.  The Court should not "add a requirement to the statute that Congress did not see fit to include."  *Caldwell*, 2021 WL 6062718, at *5 (also observing that "Congress did not intend to limit the congressional proceedings protected under section 1512(c) to only those involving its adjudicatory, investigative, or legislative functions").  The Certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes."  *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019).  Whatever the outer limits of a "proceeding before the Congress" for purposes of the obstruction statute, the Electoral College vote Certification falls well within them.

Finally, Jensen's challenge fails even if he were correct—and he is not—that for a proceeding to constitute an "official proceeding" under the obstruction statute, that proceeding must have an evidentiary function or a fact finding, testimonial, or investigative purpose.  That is because the Certification of the Electoral College vote comprises features that resemble an adjudicative proceeding.  *See Nordean*, 2021 WL 6134595, at *6 ("Even if an 'official proceeding' had to be quasi-adjudicative or quasi-judicial in some way—a requirement missing from the plain text of the statute—because Congress's certification of the Electoral College vote has *some* of those features, it would pass the test."); *Caldwell,* 2021 WL 6062718, at *7 ("Even under Defendants' narrowed reading, [the Certification] was an 'adjudicatory' proceeding and therefore an 'official proceeding' for purposes of section 1512(c)(2)").  The Certification involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to

render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the Certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.*  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

## II.      Section 1512(c)(2) Applies to the Conduct Alleged in the Third Superseding Indictment

Jensen contends that Count Two fails to state an offense because the phrase "otherwise obstructs, influences, or impedes any official proceeding" in § 1512(c)(2) "does not criminalize the disruption of a Congressional proceeding by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become." (Mot. at 5).  Relying on *Yates v. United States*, 574 U.S. 528 (2015), Jensen urges this Court to limit the scope of § 1512(c)(2) to "conduct intended to generate false testimony, impede the testimony of witnesses, or impair the collection of evidence in some fashion."  (*Id.* at 9).

Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding" has committed a crime.  A person violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding. *See* 18 U.S.C. § 1512(c)(2); § 1515(a)(1)(B).  Section 1512(c)(2) is not unconstitutionally vague or overbroad, and nothing in its text, structure, or history limits it to obstruction tied to documentary or tangible evidence.  Nor does the Supreme Court's decision in *Yates*—which construed a different term in a different statute—support imposing such an atextual limitation in § 1512(c)(2).  But even if such a limitation existed, the statute encompasses Jensen's alleged conduct.

A.      **Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers Jensen's actions on January 6, 2021.**

Section 1512(c)(2)'s text and structure demonstrate that it serves as a comprehensive prohibition on corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in § 1512(c)(2) reach broadly. For example, the words "obstruct" and "impede" can "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. By their plain meaning, therefore, the string of verbs in § 1512(c)(2) are properly viewed as "expansive" in their coverage. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013); *Nordean*, 2021 WL 6134595, at *6; *Sandlin*, 2021 WL 5865006, at *5.

Section 1512(c)'s structure confirms the breadth of its reach. Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly." First, § 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise

11

obstruct[], influence[], or impede[]" an official proceeding.  The term "otherwise," consistent with its ordinary meaning, conveys that § 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that § 1512(c)(1) proscribes.  *Burge*, 711 F.3d at 809; *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (noting that "otherwise" in § 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *see also United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that § 1512(c)(2) is "plainly separate and independent of" § 1512(c)(1), and declining to read "otherwise" in § 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, § 1512(c)(2) criminalizes the same *result* prohibited by § 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object.  *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of

accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under § 1512(c)(1).  *Petruk*, 781 F.3d at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar "[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Section 1512(c)(2) also applies to Jensen's alleged conduct, which involved trespassing into the restricted Capitol area, and assaulting, obstructing, and interfering with a U.S. Capitol Police Officer.  In so doing, Jensen hindered and delayed the certification of the Electoral College vote, an "official proceeding" as that term is defined in the obstruction statute.  *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing § 1512(c)(2) to reach that conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

In contrast, reading § 1512(c)(2) as limited only to obstructive acts akin to the document destruction or evidence tampering captured in § 1512(c)(1) suffers at least three flaws.  *First*, it would give rise to unnecessarily complex questions about what sort of conduct qualifies as "similar to but different from" the proscribed conduct "described in [§ 1512](c)(1)."  *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished); *see id.* (concluding that § 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation

of § 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object"). So construed, for example, § 1512(c)(2) may not encompass false statements made to obstruct a proceeding—though courts have widely upheld convictions for such conduct. *See Petruk*, 781 F.3d at 447 (collecting cases).

*Second*, limiting § 1512(c)(2) in that way would effectively render that provision superfluous in light of the comprehensive prohibitions against document and evidence destruction in both §§ 1512(c)(1) and 1519. *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (Section 1512(c)(1) provides a "broad ban on evidence-spoliation") (internal quotation marks omitted). By contrast, the straightforward interpretation that treats § 1512(c)(2) as a catch-all for corrupt obstructive conduct not covered by § 1512(c)(1) would "give effect to every clause and word" of § 1512(c). *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catch-all provision in § 1503's omnibus clause to obstructive acts "directed against individuals" would render that catch-all superfluous because "earlier, specific[] prohibitions" in § 1503 "pretty well exhaust such possibilities") (internal quotation marks omitted); *United States v. Watt*, 911 F. Supp. 538, 546 (D.D.C. 1995) (rejecting interpretation of the § 1503 omnibus clause that would "serve no other purpose than to prohibit acts already prohibited in the first part of the statute" because that reading would "reduce[] the omnibus clause to mere redundancy").

Nor does the fact that Congress adopted a more general catch-all in § 1512(c)(2) render superfluous other obstruction prohibitions found in Chapter 73, the criminal code's chapter on obstruction of justice. Instead, the catch-all in § 1512(c)(2) serves to capture "known unknowns." *See Yates*, 574 U.S. at 551 (Alito, J., concurring) (quoting *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009)). Indeed, "the whole value of a generally phrased residual clause . . . is that it serves

14

as a catchall" to ensure that the full range of conduct Congress sought to regulate comes within the statute, including "matters not specifically contemplated" by more specific provisions. *Beaty*, 556 U.S. at 860. In any event, "[r]edundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.

Judicial treatment of the nearby omnibus clause in § 1503, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503, is instructive. Drafted in "very broad language," the omnibus clause or "catchall provision," *see Aguilar*, 515 U.S. at 599, principally operates to criminalize obstructive conduct that falls outside the narrower prohibitions within § 1503 and neighboring provisions. *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin); *Howard*, 569 F.2d at 1333-34 (attempting to sell grand jury transcripts). No court, however, has held that the omnibus clause's broad language should be given an artificially narrow scope to avoid any overlap with § 1503's other, more specific provisions. *Cf. Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005) ("The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either."). The same is true for the catch-all provision in § 1512(c)(2).

Similarly, § 1512(c)(2)'s partial overlap with other obstruction statutes does not render those other provisions superfluous. For example, the omnibus clause in § 1503 and the congressional obstruction provision in § 1505 both reach an "*endeavor*[] to influence, obstruct, or impede" the proceedings—a broader test for inchoate violations than § 1512(c)(2)'s "attempt" standard. *See United States v. Sampson*, 898 F.3d 287, 301 (2d Cir. 2018) ("[E]fforts to witness tamper that rise to the level of an 'endeavor' yet fall short of an 'attempt' cannot be prosecuted under § 1512."); *United States v. Leisure*, 844 F.2d 1347, 1366-67 (8th Cir. 1988) (collecting cases recognizing the difference between "endeavor" and "attempt" standards). Section 1519, which covers destruction of documents and records in contemplation of an investigation or agency proceeding, does not require a "nexus" between the obstructive act and the investigation of proceeding—but § 1512(c)(2) does. The existence of even "substantial" overlap is not "uncommon" in criminal statutes. *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014). But given that §§ 1503, 1505, and 1519 each reach conduct that § 1512(c)(2) does not, the overlap provides no reason to impose an artificially limited construction on the latter provision.

*Third*, importing into § 1512(c)(2) a nexus-to-tangible-evidence-or-documents requirement would require inserting an extratextual gloss that would render the verbs in § 1512(c)(2) nonsensical. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted). The *actus reus* that those verbs encompass is obstructing, influencing, and impeding; a defendant cannot "obstruct" a document or "impede" a financial record. *Cf. Yates*, 574 U.S. at 551 (Alito, J., concurring) (rejecting interpretation of "tangible object" in § 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be

16

unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").

Courts in this district have uniformly affirmed the application of § 1512(c)(2) to the type of obstructive conduct that Jensen is alleged to have committed, and rejected the proposition that § 1512(c)(2) prohibits only acts that intentionally affect the integrity or availability of evidence in a proceeding. *See Nordean*, 2021 WL 6134595, at *7 ("[T]here is no reason to think that Section 1512(c)(2) does not apply to Defendant's conduct . . . which was allegedly intended to stop, delay, or hinder Congress's certification of the Electoral College vote, even if it does not involve the impairment of evidence." (internal quotation marks and citation omitted)); *Montgomery*, 2021 WL 6134591, at *10-18; *Mostofsky*, 2021 WL 6049891, at *11; *Caldwell*, 2021 WL 6062718, at *11-18; *Sandlin*, 2021 WL 5865006, at *5-9.

**B.     The Supreme Court's decision in *Yates v. United States* does not counsel a different interpretation.**

The Supreme Court's decision in *Yates v. United States*, which considered how to construe the statutory term "tangible object" in § 1519, 574 U.S. at 532 (plurality opinion), does not undermine the interpretation of § 1512(c)(2) articulated above.  In *Yates*, a plurality of the Court undertook a "contextual reading" to narrow the scope of "tangible object" in § 1519 to "only objects one can use to record or preserve information, not all objects in the physical world." *Id.* at 536 (plurality opinion).  The contextual features that animated that narrow interpretation in § 1519 are, however, absent in § 1512(c)(2).

The Court in *Yates* considered a prosecution brought under § 1519, which makes it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence" a federal investigation.  18 U.S.C. § 1519.  Yates was a commercial fisherman who ordered his crew

17

to throw his catch back into the sea to prevent federal authorities from determining whether he had harvested undersized fish. *Yates*, 574 U.S. at 531 (plurality opinion).  The question presented was whether "tangible object" as used in § 1519 included a fish.  A fractured Supreme Court produced three opinions.

A four-Justice plurality concluded that § 1519's "context" supported a "narrower reading." *Yates*, 574 U.S. at 539.  A holding that "tangible object" included "any and all objects," the plurality concluded, would "cut § 1519 loose from its financial-fraud mooring" in the Sarbanes-Oxley Act.  *Id.* at 532.  The plurality grounded its analysis in several "[f]amiliar interpretive guides."  *Id.* at 539.  First, neither § 1519's caption, "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," nor the title within the Sarbanes-Oxley Act within which § 1519 was placed, "Criminal penalties for altering documents," suggested that Congress aimed to "sweep" in "physical objects of every kind."  *Id.* at 539-40.

Second, the plurality relied on § 1519's placement within Title 18's Chapter 73.  *Yates*, 574 U.S. at 540.  Specifically, its placement at the end of the chapter following several provisions "prohibiting obstructive acts in specific contexts," suggested that Congress did not intend § 1519 as an "across-the-board" spoliation ban.  *Id.*  In contrast, the plurality noted, Congress directed codification of the Sarbanes-Oxley Act's "other additions . . . within or alongside retained provisions that address obstructive acts relating broadly to official proceedings and criminal trials." *Id.*  To illustrate one such "broad[]" provision, the plurality specifically referred to the provision at issue in this case, § 1512(c), which, as noted above, was titled "Tampering with a record or otherwise impeding an official proceeding," and which Congress placed (as § 1512(c)) within the "broad proscription[]" found in the "pre-existing" § 1512.  *Id.* at 541.

Third, the plurality compared § 1519 with the "contemporaneous passage" in the Sarbanes-Oxley Act of § 1512(c)(1).  *See* 574 U.S. at 541.  Because § 1512(c)(1)'s reference to "'other object'" encompassed "any and every physical object," the plurality "resist[ed] a reading of § 1519" that would render § 1512(c)(1) superfluous.  *Id.* at 542-43.  Moreover, the plurality reasoned, the fact that Congress's formulation in § 1519 did not track the language in § 1512(c)(1) indicated that Congress intended § 1519 to be construed differently from § 1512.  *Id.* at 545 n.7.  More specifically, the plurality concluded that, by adopting those different formulations, Congress intended the phrase "tangible object" in § 1519 to "have a narrower scope" than the phrase "'other object'" in § 1512(c)(1).  *Id.* at 544-45.

Fourth, the plurality found support for its narrowing construction in the *noscitur a sociis* and *ejusdem generis* interpretive canons.  574 U.S. at 543-46.  Because "tangible object" in § 1519 was the "last in a list of terms that begins 'any record [or] document,'" the *noscitur a sociis* canon counseled interpreting that term "to refer . . . specifically to the subject of tangible objects involving records and documents."  *Id.* at 544.  That reading, moreover, "accord[ed] with" § 1519's verbs, which include "'falsif[ying]'" and "'mak[ing] a false entry in'"—terms that commonly "take as grammatical objects records, documents, or things used to record or preserve information."  *Id.* (emphasis omitted).  Similarly, application of the *ejusdem generis* canon—that "general words" following "specific words" when listed in a statute are "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *id.* at 545 (internal quotation marks omitted)—indicated that Congress "would have had no reason to

refer specifically to 'record' or 'document'" if it intended § 1519 to "capture physical objects as dissimilar as documents and fish." *Id.* at 546.[3]

Finally, the plurality stated that, to the extent its "recourse to traditional tools of statutory construction" left "any doubt" about how to interpret "'tangible object'" in § 1519, the rule of lenity favored a narrow interpretation of that phrase. 574 U.S. at 547-48. Because a broad reading of § 1519 would criminalize "tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil," the plurality reasoned that before it opted for the "harsher alternative," Congress must speak "in language that is clear and definite." *Id.* at 548 (internal quotation marks omitted).

Justice Alito concurred in the judgment on narrower grounds.[4] Observing that the statutory "question is close," Justice Alito reasoned that the combined effect of "the statute's list of nouns, its list of verbs, and its title" favored the plurality's conclusion. *Yates*, 574 U.S. at 549 (Alito, J., concurring). Section 1519's nouns suggested that "'tangible object'" in that provision "should refer to something similar to records or documents." *Id.* at 550. Similarly, § 1519's list of verbs are "closely associated with filekeeping," and at least one verb phrase—"'makes a false entry

---

[3] By way of example, the Supreme Court cited its decision in *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), where the Court interpreted the residual clause in the Armed Career Criminal Act (ACCA), which covered "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The ACCA's enumeration of specific crimes suggested that the "otherwise involves" provisions applied only to "*similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142.

[4] Under the rule announced in *Marks v. United States*, 430 U.S. 188 (1977), Justice Alito's concurrence represents the binding holding as the narrowest opinion among those concurring in the judgment. *See id.* at 193.

in'"—"makes no sense outside of filekeeping." *Id.* at 551.  Finally, § 1519's title—"Destruction, alteration, or falsification of records in Federal investigations and bankruptcy,"—suggested that "no matter how other statutes might be read," § 1519 "does not cover every noun in the universe with tangible form." *Id.* at 552.

Justice Kagan, joined by three other Justices, dissented.  In her view, the term "'tangible object'" in § 1519 was "broad, but clear"; it encompassed, as it would in "everyday language," "any object capable of being touched." *Yates*, 574 U.S. at 553 (Kagan, J., dissenting).  Reviewing § 1519's text and context demonstrated that "Congress said what it meant and meant what it said." *Id.* at 555.  Moreover, Justice Kagan reasoned, when Congress in § 1519 used a "broad term" such as "tangible object," an interpretation that provided "immunity" to defendants who destroyed non-documentary evidence had "no sensible basis in penal policy." *Id.* at 558.

The decision in *Yates* does not unsettle the straightforward interpretation of § 1512(c)(2) articulated above because the "familiar interpretive guides" on which the plurality (and, to some extent, Justice Alito) relied to narrow the scope of § 1519 do not apply to § 1512(c)(2).

Consider first, as the plurality did, § 1512's statutory title.  *See Yates*, 574 U.S. at 539-40 (plurality opinion); *see also id.* at 552 (Alito, J., concurring) (considering § 1519's title).  Even leaving aside the "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text," *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947), § 1512's title, "Tampering with a witness, victim, or an informant," provides no reason to narrow the interpretation of § 1512(c)(2).  For one thing, Congress named that title 20 years before it enacted § 1512(c) in the Sarbanes-Oxley Act, and then simply opted not to rename § 1512 to reflect either of the two new obstruction prohibitions added in § 1512(c). Section 1512's overarching title therefore does not have the same interpretive force as § 1519's

title, which was enacted by the same Congress that enacted the rest of § 1519.  *See Yates*, 574 U.S. 541 n.4 (plurality opinion).  Additionally, whereas § 1519's title within the Sarbanes-Oxley Act, "Criminal penalties for altering documents," suggested a narrow focus on document destruction, *see id.* at 539-40, § 1512(c)'s title within the Sarbanes-Oxley Act reflected both the document-destruction prohibition in § 1512(c)(1) *and* the broader catch-all obstruction provision in § 1512(c)(2): "Tampering with a record *or otherwise impeding an official proceeding*." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered).

Similarly inapposite here is § 1512(c)(2)'s placement within Chapter 73.  *See Yates*, 574 U.S. at 540-41 (plurality opinion).  Whereas Congress enacted § 1519 as a standalone prohibition and placed it at the end of the chapter "together with specialized provisions expressly aimed at corporate fraud and financial audits," it instead inserted § 1512(c) within the "pre-existing" § 1512.  *Id.* at 541 (plurality opinion).  So situated, § 1512(c)(2)'s function as a catch-all obstruction prohibition is consistent with § 1512's role as a "broad proscription" on obstructive acts.  *See id.* (plurality opinion).

That reading, moreover, is consistent with how the *Yates* plurality opinion describes § 1512(c).  *See* 574 U.S. at 541-43, 545.  Contrasting the term "other object" in the document-destruction provision in § 1512(c)(1) with "tangible object" in § 1519, the plurality concluded that § 1512(c)(1)'s later enactment suggested Congress intended it to reach more broadly than § 1519. *Id.* at 542-43; *id.* at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep with it.").  And if Congress intended § 1512(c)(1) to cover more ground than § 1519, § 1512(c)'s text and structure make plain that it further intended § 1512(c)(2) to cover more ground than § 1512(c)(1).

The plurality, 574 U.S. at 544-45, and Justice Alito, *id.* at 550, also drew support for their narrowing construction of § 1519 from interpretive canons, but those canons do not help Jensen here.  "Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category."  *United States v. Espy*, 145 F.3d 1369, 1370-71 (D.C. Cir. 1998).  Section 1519's structure—a list of specific terms ("record" and "document") followed by a more general term ("tangible object")—in a singular provision is susceptible to that analysis.  *Yates*, 574 U.S. at 545-56 (plurality opinion); *id.* at 549-50 (Alito, J., concurring).  But § 1512(c)'s structure differs significantly: it includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive "or," and then a separate numbered provision containing the separate catch-all obstruction prohibition.  "The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).  Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in § 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable," *Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to § 1512(c)(2), which embodies the same structure.  *Cf. Loughrin*, 573 U.S. at 359 (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprised "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses on an equal footing and indicating that they have separate meanings"); *see also Nordean*, 2021 WL 6134595, at *7-8 (explaining that the interpretive canons from *Yates* have no application to

the interpretation of § 1512(c)(2)); *Montgomer*y, 2021 WL 6134591, at *14 ("In short, because the two prongs of Section 1512(c) are not parallel, the *noscitur* and *ejusdem* canons have little bearing on the interpretative question before the Court."); *Caldwell*, 2021 WL 6062718, at *18 (distinguishing *Yates*); *Sandlin*, 2021 WL 5865006, at *6-8 (same).

The Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, on which the *Yates* plurality in part relied (*see supra*, note 3), does not suggest a different conclusion with respect to § 1512(c)(2).  The statutory provision at issue in *Begay* included a list of specified crimes ("any crime . . . that is . . . burglary, arson, or extortion, or involves use of explosives") followed, in the same sentence, by a more general category ("or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)); the Supreme Court held that the "otherwise involves" provision covered only crimes "similar" to those in the enumerated list.  *See* 553 U.S. at 142-43.  In § 1512(c)(2), by contrast, "the 'otherwise' phrase . . . stands alone, unaccompanied by any limiting examples" in a provision that "is plainly separate and independent of" § 1512(c)(1).  *Ring*, 628 F. Supp. 2d at 224 n.17.  "Thus, just as *Begay* did not define the 'otherwise' clause" in § 924(e)(2)(B)(ii) "in terms of the independent and preceding" § 924(e)(2)(B)(i), § 1512(c)(2)'s "use of 'otherwise'" should not be construed "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering."  *Id.*; *see United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251 (S.D. Tex. 2020) ("[Section 1512(c)(2)] does not appear as a broad catch-all term at the end of a list that must be wrangled into conformity with congressional intent using a canon of construction," but instead "exists as a potent, independent, and unequivocal catch-all provision that reaches all manner of obstructive conduct related to an official proceeding."); *Montgomery*, 2021 WL 6134591, at *11-12 (rejecting the comparison to *Begay*).

The *noscitur a sociis* canon is similarly inapplicable here.  That canon is used only to construe terms that are "of obscure or doubtful meaning," not to change the meaning of unambiguous terms that are simply broad.  *Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (2010).  Moreover, the canon may be invoked only "when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning."  *S. D. Warren Co. v. Maine Bd. of Env't Prot.,* 547 U.S. 370, 378 (2006) (internal quotation marks omitted); *see Beecham v. United States,* 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").  As noted above, the first and second clauses of § 1512(c) are not items in a list of related terms; rather, they are distinct offenses phrased in the disjunctive.  18 U.S.C. § 1512(c).  That structure therefore does not lend itself to application of *noscitur a sociis*.  *See De Bruhl-Daniels*, 491 F. Supp. 3d at 251 (declining to apply the *noscitur a sociis* canon to § 1512(c)).

Finally, the *Yates* plurality's reliance on the rule of lenity has no application here.[5]  The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."  *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *see Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring).  There is no grievous ambiguity here.  Section 1512(c)(2)'s text, structure, history, and purpose make clear that it functions as a broad catch-all prohibition on obstructive conduct

---

[5] Justice Alito did not rely on several features that guide the plurality opinion, including the rule of lenity.  *See* 574 U.S. at 549 (noting that the case "should be resolved on narrow grounds," namely, "the statute's list of nouns, its list of verbs, and its title," but not discussing the Sarbanes-Oxley Act, § 1519's placement within Chapter 73, the Supreme Court's decision in *Begay*, or the rule of lenity).  It follows that that his controlling opinion, *see supra* note 4, makes even more clear that § 1512(c)(2) should not be interpreted differently than its text and structure would suggest.

that covers "otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *Petrik*, 781 F.3d at 447 (internal quotation marks omitted); *see also Nordean*, 2021 WL 6134595, at *12 (rejecting rule of lenity argument because "Section 1512(c)(2) is not ambiguous after application [of] the ordinary canons of statutory construction."); *Montgomery*, 2021 WL 6134591, at *23 (finding the rule of lenity arguments unpersuasive because "all of the essential terms of [§ 1512(c)(2)] have well-accepted meanings and . . . the Court is not left simply to guess what Congress intended"); *Mostofsky*, 2021 WL 6049891, at *11 (same); *Caldwell*, 2021 WL 6062718, at *21 (same); *Sandlin*, 2021 WL 5865006, at *10 (same).

The plurality also found the rule of lenity "relevant" in part given the absence of limiting principles under a broad construction of § 1519. *See Yates*, 574 U.S. at 548. But neither of the features that constrain § 1512(c)(2)'s reach—the government's requirement to establish that the defendant acted "corruptly" and a nexus to a contemplated official proceeding, as discussed in Part III.B below —is present in § 1519. Section 1519 requires that the defendant act "knowingly" and "with the intent to impede, obstruct, or influence," 18 U.S.C. § 1519, but does not impose the more stringent "corruptly" *mens rea*. And courts of appeals have uniformly concluded that § 1519 does not include a "nexus" requirement. *See United States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (Supreme Court's decisions in *Marinello*, *Arthur Andersen*, and *Aguilar* do not "overrule[]" existing circuit precedent that § 1519 "does not have a nexus requirement"); *United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012) (declining to extend nexus requirement from §§ 1503 and 1512(b)(2) to § 1519); *United States v. Kernell*, 667 F.3d 746, 753-55 (6th Cir. 2012); *United States v. Yielding*, 657 F.3d 688, 712-14 (8th Cir. 2011); *see also* S. Rep. No. 107-146, at 14-15 ("[Section 1519] is specifically meant not to include any technical requirement, which some courts

have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.").

To be sure, no court appears to have applied § 1512(c)(2) to conduct precisely akin to Jensen's alleged actions, namely, confronting and assaulting law enforcement officers as he forced his way into the Capitol in an effort to halt or delay a congressional proceeding.  Even if § 1512(c)(2)'s application to this case was "not expressly anticipated by Congress," that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command."  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation marks and brackets omitted).  That is so even if the statute's application in a particular case "reaches 'beyond the principal evil' legislators may have intended or expected to address."  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)).  And any policy-based suggestion "that the current scheme should be altered," *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020), ought to be addressed to Congress, not this Court, *see, e.g.*, *United States v. Rodgers*, 466 U.S. 475, 484 (1984) ("Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress.").

## III.    Section 1512(c)(2) is Not Unconstitutionally Vague

Jensen contends that § 1512(c)(2) is unconstitutionally vague, both facially and as applied. He specifically alleges that § 1512(c) is unconstitutionally vague due to the term "corruptly" and the inclusion of the word "otherwise."  As several judges in this district have recently concluded, this argument, too, lacks merit.  *See Nordean*, 2021 WL 6134595, at *9-12 (rejecting vagueness challenges to § 1512(c)(2)); *Montgomery*, 2021 WL 6134591, at *18-24 (same); *Mostofsky*, 2021 WL 6049891, at *11 (same); *Caldwell*, 2021 WL 6062718, at *8-11 (same); *Sandlin*, 2021 WL 5865006, at *10-14 (same).  Section 1512(c)(2) is not unconstitutionally vague, and Jensen's

conduct—which includes obstructing, impeding, and assaulting a U.S. Capitol Police Officer on January 6, while carrying a deadly and dangerous weapon, and as part of a mob—falls squarely within it.

### A.   Vagueness doctrine.

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).  The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"  *Bronstein*, 849 F.3d at 1107

(quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).  A statute is instead vague where it fails to specify any "standard of conduct . . . at all."  *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'"  *Johnson v. United States*, 576 U.S. 591, 603-04 (2015) (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)). There is a strong presumption that a statute is not vague.  *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

**B.    "Corruptly" is not unconstitutionally vague as applied to Jensen's conduct.**

Jensen's vagueness challenge focuses principally on the term "corruptly," which he claims is too vague to provide constitutionally adequate notice.  (Mot. at 11-12).  Not so.  Many courts, including the D.C. Circuit, have upheld the term "corruptly" as passing constitutional muster in the context of related obstruction statutes.  *See, e.g.*, *United States v. Morrison*, 98 F.3d 619, 630-31 (D.C. Cir. 1996) (rejecting vagueness challenge to "corruptly" under § 1512(b)); *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).

Because "corruptly" is not defined in the statute, it is "understood . . . to have its ordinary meaning." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn*

*and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam). For purposes of § 1512(c)(2), the term "corruptly" has been construed as having two components: (1) intent to obstruct, impede, or influence; and (2) wrongfulness. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing" (internal quotation marks omitted)); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice."); *see Mostofsky,* 2021 WL 6049891, at *11 ("corruptly" requires that a defendant act "'unlawfully, and with the intent to obstruct[,]' impede, or influence an official proceeding") (citing *Sandlin,* 2021 WL 5865006, at *14); *Caldwell*, 2021 WL 6062718, at *11 (noting that, "at the very least," corruptly "requires Defendants to have acted with consciousness of wrongdoing"); *Nordean*, 2021 WL 6134595, at *11 (same). The reach of the term "corruptly" in § 1512(c)(2) is also limited by the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *Young*, 916 F.3d at 386 (citation omitted).

Jensen relies exclusively on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) in arguing that the term "corruptly" renders § 1512(c) unconstitutionally vague. *Poindexter* addressed a separate statute, 18 U.S.C. § 1505, that prohibited "corruptly" obstructing a

congressional inquiry.  The D.C. Circuit held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss." *Id.* at 378.  *Poindexter* found that the statute "does not at all clearly encompass lying to the Congress," *id.*, and "the term 'corruptly' [was] too vague to provide constitutionally adequate notice" as to which lies it prohibited, *id.* at 379.  The court disclaimed any conclusion that "'corruptly'" in § 1505 was "unconstitutionally vague as applied to all conduct." *Id.* at 385.  The court also declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others.'" *Id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

*Poindexter* is inapposite for three reasons.[6]  *See Nordean*, 2021 WL 6134595, at *9-10 (distinguishing *Poindexter*); *Montgomery*, 2021 WL 6134591, at *18-19 (same); *Mostofsky*, 2021 WL 6049891, at *11 (same); *Caldwell*, 2021 WL 6062718, at *8-10 (same); *Sandlin*, 2021 WL 5865006, at *10-11 (same).  First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to § 1505's use of "corruptly" and expressly declined to hold "that term unconstitutionally vague as applied to all conduct."  951 F.2d at 385.  Five years later, in *Morrison*, 98 F.3d at 629-30, the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial.  As noted above, other courts have rejected vagueness challenges to the term "corruptly," recognizing "the narrow reasoning used in *Poindexter*" and "cabin[ing] that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also*

---

[6] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459.  As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, *personally or by influencing another*, including making a false or misleading statement." (Emphasis added).

*Caldwell*, 2021 WL 6062718, at *9 ("[E]very circuit court to have considered *Poindexter* has cabined it to its facts, and no court of appeals, including the D.C. Circuit, has read *Poindexter* to mean . . . that the term 'corruptly' in any obstruction statute is fatally vague."). Jensen's incantation of *Poindexter* accordingly fails to establish that § 1512(c) suffers the same constitutional indeterminacy. Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). In *Arthur Andersen*, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil.*" Id.* at 705. In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.

Third, as noted above, courts have encountered little difficulty defining "corruptly" for purposes of § 1512(c)(2) following *Arthur Andersen*. *See supra*, at 29-30. Such efforts demonstrate that the statute's "corruptly" element is not so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

### C.   The indictment alleges that Jensen acted "corruptly" to obstruct the Certification.

Section 1512(c)(2) "passes constitutional muster" because it "provides a discernible standard when legally construed." *Montgomery*, 2021 WL 6134591, at *20. A conviction under Section 1512(c)(2) requires proof that "the natural and probable effect of the defendant's actions were to obstruct the official proceeding; that he knew that his actions were likely to obstruct that proceeding; and that he acted with the wrongful or improper purpose of delaying or stopping the official proceeding." *Id.* at *22. Whether the evidence proves those elements in a given case is a question not of vagueness but of evidentiary sufficiency, a question that is premature at this

juncture. *Id.*; *accord Williams*, 553 U.S. at 306 ("Close cases can be imagined under virtually any statute.  The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").

Thus, at this stage in the proceedings, it is enough that the indictment alleges the elements of obstruction of justice as set out under § 1512(c)(2)—namely, that the defendant: (1) corruptly, (2) did or attempted to obstruct, influence, or impede an official proceeding, that is, a proceeding before Congress, by, among other things, entering and remaining in the United States Capitol without authority and by assaulting, obstructing, and interfering with a U.S. Capitol Police officer. *Ring*, 628 F. Supp. 2d at 223; *United States v. Reffitt*, No. 21-cr-32, Dkt. 81, at 7 (Dec. 29, 2021) (Friedrich, J.) ("It is enough for the indictment 'us[e] the statutory language and specify[] the time and place of the offense.  [The defendant's] indictment tracks the language of § 1512(c)(2) and explains which proceeding he allegedly obstructed.  That is adequate to put him on notice of the charge against him." (internal quotation marks and citations omitted)).

**D.    The "otherwise" catch-all clause is not unconstitutionally vague as applied here.**

As described in detail in Part II.A, the catch-all clause of "otherwise obstructs, influences, or impedes" in § 1512(c)(2) is best read broadly, not as constrained by the subsection preceding it. *See supra*, at 11-17.  So read, this catch-all provision "plainly encompasses the conduct alleged here, even if no court has had the occasion to apply Section 1512(c)(2) to similar facts." *Nordean*, 2021 WL 6134595, at *9.  Thus, § 1512(c)(2) is not unconstitutionally vague based on its inclusion of the catch-all "otherwise" clause.

**IV.    The First Amendment Does Not Insulate Jensen's Unlawful Acts from Prosecution**

Jensen suggests in his motion that storming the Capitol building and grounds and interfering with law enforcement 's efforts to stop him are somehow protected from prosecution because they constitute acts of "speech, of association, and of assembly to petition the Government for redress of grievances."  (Mot. at 4).  Jensen's argument is both legally and factually flawed.

First, the conduct with which Jensen is charged—corruptly obstructing, influencing, and impeding an official proceeding by unlawfully entering the Capitol Building and by assaulting and interfering with a law enforcement officer—is not protected by the First Amendment.  As this Court has concluded, "[n]o matter [the rioters'] political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment." *Nordean*, 2021 WL 6134595, at *13.  Even if Jensen's charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had.  *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment.")); *see also Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (government may punish physical obstruction); *Cox v. Louisiana*, 370 U.S. 536, 555 (1965) (The First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations."); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message.").

Even assuming some aspect of Jensen's charged conduct warranted First Amendment protection, applying § 1512(c)(2) to him still passes muster.  The Supreme Court has "held that when speech and nonspeech elements are combined in the same course of conduct, a sufficiently

34

important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968) (cleaned up).  Under *O'Brien*, a statute is constitutional if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377.  As this Court has recognized, the government has a "weighty interest in protecting Congress's ability to function without 'corrupt' interference, and that interest is unrelated to the suppression of free expression." *Nordean*, 2021 WL 6134595, at *14.  Moreover, applying the statute to the defendant "imposes no more than an incidental limitation on First Amendment freedoms, if even that." *Id.*  Indeed, "by focusing on 'corrupt' actions, the statute does not even reach free speech," and goes no further than what is essential to prevent the obstruction of official proceedings of Congress. *Id.* (citing *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996) ("By targeting only such persuasion as is corrupt, Section 1512(b) does not proscribe lawful or constitutionally protected speech[.]" (cleaned up))); *see also Caldwell*, 2021 WL 6062718, at *22 ("Section 1512(c)(2) targets only 'corrupt' acts of obstructing, influencing, or impeding an official proceeding.  Therefore, it does not 'proscribe lawful or constitutionally protected speech.'" (quoting *Thompson*, 76 F.3d at 452)).  Finally, § 1512(c)(2) "'leave[s] open ample alternative channels for communication of the information.'" *Id.* (quoting *Am. Libr. Ass'n v. Reno*, 33 F.3d 78, 88 (D.C. Cir. 1994)).

## **CONCLUSION**

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that Jensen's motion be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: __/s/ Hava Arin Levenson Mirell__
Hava Arin Levenson Mirell
Assistant United States Attorney
Detailee
CA Bar No. 311098
312 N. Spring St., Suite 1100
Los Angeles, CA 90012
Phone: (213) 894-0717
Email: Hava.Mirell@usdoj.gov