UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** | * |
| v. | * Crim. No. 21 CR 006 (TJK) |
| **DOUGLAS A. JENSEN** | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S MOTION TO TRANSFER TRIAL

Douglas Jensen, by and through counsel, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, requests a change of venue due to significant prejudice in the District of Columbia ("DC"). This prejudice will deny him of his right to a fair and impartial jury as guaranteed by the Fifth and Sixth Amendments. Mr. Jensen submits that DC is so small, and the events of January 6 so close to home that the venire must be presumed as tainted. Defendant proposes that this matter be moved to the Southern District of Iowa, where he resides and where he was arrested.

### Introduction

1. Mr. Jensen is concerned that he will not receive a fair trial in DC. He simply has no expectation of being able to empanel a fair and impartial jury in DC. The residents of the District of Columbia were just too close to the chaos at the Capitol on January 6, 2021.

1

2. The Constitution mandated that the District of Columbia be no larger than 100 square miles. But by the Civil War, DC was actually quite a bit smaller than that, having given back about a third of its land to Virginia. DC is now comprised of 68 square miles of which 61 square miles consists of land. See, [Washington Dc Map / Geography of Washington Dc/ Map of Washington Dc - Worldatlas.com](#) According to Map Quest, the distance between the U.S. Capitol and Silver Spring MD is 7.5 miles, which is greater than that of the U.S. Capitol to any other point in DC. This means that anyone living in the DC was less than 7.5 miles away from the events that occurred at the U.S. Capitol on January 6, 2021.

## Legal Standard

3. The Firth Amendment and the Sixth Amendment entitle criminal defendants to a fair trial by an impartial jury. "The great value of the trial by jury certainly consists in its fairness and impartiality." *United States v. Burr*, 25 F. Cas. 49, 51 (CC Va. 1807). An impartial jury is required under the Constitution and has been required since the times of common law. *Id; see also Patton v. Yount*, 467 U.S. 1025 (1984). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

Federal Rule of Criminal Procedure 21(a) instructs that district courts "must transfer the proceeding … if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair

and impartial trial there." The Sixth Amendment secures to an accused the right to trial "by an impartial jury of the state and district wherein the crime shall have been committed." See also U.S. Const., Art. III, §2, cl. 3. However, the constitutional place-of-trial prescriptions do not prevent transfer to a different location at the defendant's request if extraordinary local prejudice will prevent a fair trial. *United States v. Skilling*, 561 U.S. 358, 130 S. Ct. 2896, 2913 (2010), *citing In Re Murchison*, 349 U.S. 133, 136 (1955). Fed. R. Crim. P. 21 provides that "[u]pon the defendant's motion, a court must transfer the proceeding … to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." The Supreme Court has long held that when the community from which jurors are drawn is sufficiently *affected by adverse publicity or by the effects of the events* at issue, or both, there arises a presumption of prejudice such that voir dire cannot perform the usual function of securing a fair and impartial jury.  See *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966); *Estes v. Texas*, 381 U.S. 532, 55051 (1965); *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963); *Irvin v. Dowd*, 366 U.S. 717, 725-28 (1961). To be sure, a presumption of prejudice will only arise in the extreme case. Skilling, 130 S. Ct. at 2915. But this is such a case. The publicity, tremendous local impact and galvanizing community reaction compelled a change of venue in

the Oklahoma City bombing case. *United States v. McVeigh*, 918 F. Supp. 1467 (D. Colorado 1996).   This Court should do the same.

## Argument

*Voir dire* is valuable, but it has limits.[1] V*oir dire* usually does not entail inquiring into jurors' ideas about each and every element of charged offenses. And asking jurors to state whether they have reached conclusions that they cannot set aside during the trial will not reveal all prejudgment because jurors do not always understand which of their opinions are relevant, and what they cannot take for granted without proof beyond a reasonable doubt. *See United States v. Tsarnaev*, 968 F.3d 24, 58 (1st Cir. 2020), *cert. granted*, 141 S. Ct. 1683 (2021) (observing that asking potential jurors about whether they had read anything that influenced their opinion or otherwise made them biased in Boston Marathon bombing case was not likely to reveal bias in part because prospective jurors may be unaware of such bias) (quoting *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982)) (internal quotations omitted).

---

[1] We use the term *voir dire* generally. We understand there are many forms of *voir dire,* including Court directed *voir dire*, attorney directed *voir dire*, and individual *voir dire*.  As well, we have had positive experiences with juror questionnaires, particularly in high-profile cases and cases involving sensitive subject matter. However, given the highly unusual circumstances and acute prejudice discussed in this motion, no combination of methods would be adequate to select an impartial jury in our assessment.

Although many defendants request a transfer of venue citing pretrial publicity, the Sixth Amendment is concerned with whether jurors' conclusions will be induced by "*any* outside influence" rather than "only by evidence and argument in open court[.]" *Skilling v. United States*, 561 U.S. 382, 378 (2010) (quoting *Patterson v. Colorado ex rel. Attorney General of Colo.*, 205 U.S. 454, 462 (1907) (opinion for the Court by Holmes, J.)) (emphasis added). That outside influence can be public print *or* "private talk." *Id.* (quoting *Patterson*, 205 U.S. at 462). It can be "the sheer number of victims." *See id* at 437-38 (Sotomayor, J., concurring in part and dissenting in part) (quoting with approval the Fifth Circuit's statement that the district court overseeing Skilling's trial "seemed to overlook that the prejudice came from more than just pretrial media publicity, but also from the sheer number of victims"); *id*. at 437 (quoting with approval the Fifth Circuit's statement that district court lost sight of the proposition that "[t]he evaluation of the volume and nature of reporting is merely a proxy for the real inquiry: whether there could be a fair trial by an impartial jury that was not influenced by outside, irrelevant sources"). Or the improper outside influence may be the *nature* of the media to which jurors have been exposed, or its prevalence close to the time to trial, or its tendency to provoke identification with those directly affected by the conduct at issue that the jurors feel a personal stake in the outcome. *Skilling,* 561 U.S. at 383 (2010) (discussing broadcast of confession in small town in *Rideau v. Louisiana*, 373 U.S. 723 (1963);

5

*United States v. McVeigh*, 918 F. Supp. 1467, 1473 (W.D. OK 1996). The outside influence may also be "such identification with a community point of view that jurors feel a sense of obligation to reach a result which will find general acceptance in the relevant audience." *McVeigh*, 918 F. Supp. at 1473.

In *Skilling v, United States*, although the Court established no bright line rules about when media can contribute to a constitutional need to transfer venue, Justice Ginsberg noted that, when the Court has ruled that a case should have been transferred to a new venue in order to preserve defendants' constitutional right to trial by an impartial jury, it has emphasized (1) "the size and characteristics of" the district with venue, (2) the extent to which news stories about the defendant contained confessions "or other blatantly prejudicial information of the type readers or viewers" in that venue "could not reasonably be expected to shut from sight," and (3) the time that has passed between periods of significant publicity and the trial (if any has). *Skilling,* 561 U.S. at 382-83; *id.* at 381 ("[P]resumption of prejudice . . . attends only the extreme case.").

In *Rideau v. Louisiana,* the Court concluded that no *voir dire* could cleanse the taint of a video of the defendant's uncounseled interrogation and "confession," which had been broadcast in a small town several times before trial. *Rideau*, 373 U.S. at 727. Here, potential jurors have been exposed to hours and hours of videos

6

of the events of January 6, and hundreds of pictures of those events. Perhaps most importantly, the jury pool lives less than 7.5 miles from where the events occurred.

Whereas the single recording at issue in *Rideau* captured a "dramatically staged confession of guilt," the hundreds of January 6 videos and photos circulated over the last 13 months capture the scene of the event of January 6. Vivid images splashed across DC newspapers, television, and other media outlets for the last thirteen months show people scaling the Capitol walls, hoisting a hangman's gallows and noose, waving Confederate flags, putting their feet on the desks in the Capitol, rifling through papers on desks in the Capitol, milling about and hanging from the balconies in the Senate Chamber, and appearing to try to break into the House chamber, among hundreds of other scenes.[2] Many of the images – and the general impression that arises from viewing many of them – are "likely imprinted indelibly in the mind of anyone who [viewed them]," just like the recorded interrogation in *Rideau* would have been. *See Skilling*, 561 at 382-83. Much of this evidence has nothing to do with Mr. Jensen, but because DC jurors have been inundated with these

---

[2] *See, e.g.* Staff, "No pictures, no pictures': The enduring images from Jan. 6," *The Washington Post* (Jan. 4, 2022), at https://www.washingtonpost.com/nation/interactive/2022/photos-jan-6-capitol/ (last visited 2/3/22); "Chilling images from the Capitol riot: Jan. 6 insurrection in photos," *USA Today* (Jan 5. 2022), at https://www.usatoday.com/picture-gallery/news/politics/2022/01/03/jan-6-insurrection-photos-capitol-riot/9052798002/ last visited 2/3/22); D. Bennett, et al., "41 minutes of fear: A video timeline from inside the Capitol siege," *The Washington Post* (Jan. 16, 2021), at https://www.washingtonpost.com/investigations/2021/01/16/video-timeline-capitol-siege/ (last visited 2/3/22).

videos and live in the "backyard" of the Capitol, they cannot be expected to know that, or to "shut [them] from sight" during trial. *See Skilling*, 561 U.S.

As such, the pretrial publicity about January 6 has been "blatantly prejudicial," and distinguishable from the type of press coverage that failed to convince the majority of the Supreme Court that prejudice should be presumed in *Skilling*. *Skilling*, 561 U.S. at 382; (distinguishing publicity in that case from the publicity in *Rideau* because it contained "[n]o evidence of the smoking gun variety" and was not so shocking that it could not be shut from jurors' minds during trial).

The concept of presumption of prejudice is predicated on the idea that the institution of the jury is occasionally fallible. Of course, jurors are almost always trusted to represent their views wholly and accurately during *voir dire*, and to follow the Court's instructions if selected for the jury. But the Supreme Court has recognized that a failsafe may be needed under a narrow set of conditions that make it more difficult for a juror to accurately assess their own bias, or to ignore salient community attitudes about the case. *See Rideau*, 373 U.S. at 726-27 (concluding that no review of "the *voir dire* examination of the members of the jury" was necessary to determine in that case that "that due process of law. . . required a [transfer]"); *see also, e.g.*, *Murphy v. Fla.*, 421 U.S. 794, 802 (1975) ("Even these indicia of impartiality [during *voir dire*] might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory."); *Irvin v.*

*Dowd*, 366 U.S. 717, 728 (1961) ("No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows [during *voir dire*] is often its father.").

Here, under these extreme circumstances, in such a colossal and historically important case, with a high-profile defendant, prejudice must be presumed, and the Court should transfer this case to another venue to preserve Mr. Jensen's rights under the Constitution, or at least pursuant to the Court's discretion under Rule 21 of the Rules of Criminal Procedure. *See Skilling*, 561 U.S. at 446 n.9 (Sotomayor, J., concurring in part and dissenting in part) (noting that district courts have wide discretion to transfer a case to another venue even if trial in the originating venue would not violate the Constitution, and that it would not have been imprudent to transfer the Skilling case given "the widely felt sense of victimhood among Houstonians and the community's deep-seated animus toward Skilling" even if these issues did not preclude a constitutional trial).

Finally, Mr. Jensen is scheduled for trial in September of 2022. By that time, other January 6 defendants will have gone to trial. The already-small pool of even potentially eligible jurors will shrink, and pretrial publicity will likely experience other spikes. As such, the list of reasons for the Court to presume prejudice will only grow in the time between now and trial. To ensure that Mr. Jensen's trial proceeds

as scheduled, and that he is tried by an impartial jury, the Court should transfer this case to another suitable venue as soon as possible.

## Conclusion

Mr. Jensen has demonstrated that he faces significant prejudice in the District of Columbia, prohibitive of a fair and impartial jury trial. He rightfully has invoked his constitutional guarantee to a fair trial by an impartial jury under the Fifth and Sixth Amendments, and aptly requests a transfer of venue to the Southern District of Iowa pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure.

_____/s/_____
Christopher M. Davis
Counsel for Douglas Jensen

Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
(202) 234-7300

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 11th day of March 2022.

_____/s/_____
Christopher M. Davis