UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-6 (TJK) |
| v. | : | |
| | : | |
| DOUGLAS AUSTIN JENSEN, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COUNT ONE

Defendant Douglas Austin Jensen, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to dismiss Count One of the superseding Indictment filed on November 10, 2021 (ECF 50), charging him with violating 18 U.S.C. § 231(a)(3) (civil disorder). ECF 63 ("Def. Mtn.") Although his motion makes no mention of it, several recent opinions in this district that have rejected the challenges Jensen raises here, *see United States v. Fischer*, 21-cr-234 (CJN), 2022 WL 782413 (D.D.C. Mar. 15, 2022); *United States v. McHugh*, --- F.Supp.3d ---, 2022 WL 296304 (Feb. 1, 2022); *United States v. Mostofsky*, --- F.Supp.3d ---, 2021 WL 6049891 (D.D.C. Dec. 21, 2021) —including this very Court, *see United States v. Nordean*, 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021). There is no reason to depart from these opinions. The defendant's motion should be denied.

## BACKGROUND

On January 6, 2021, Jensen, having traveled halfway across the country to participate in the rally in support of then-President Trump, decided to join a mob to storm the U.S. Capitol building in an effort to stop the certification of the Electoral College votes. He scaled the walls to reach the doors to the building. He was among the first rioters to enter the Capitol building itself, climbing through a recently broken window to do so. Once inside, he chased U.S. Capitol Police

officer Eugene Goodman up a flight of stairs in a menacing fashion, refusing to obey orders to stop and leave.  During the attack, as Jensen later admitted, he carried a knife.  He later told law enforcement that he wanted to stop then-Vice President Mike Pence, adding that "I was trying to fire up this nation," and "I'm all about a revolution."

Jensen was charged by superseding Indictment on November 10, 2021, with, among other offenses, civil disorder, in violation of 18 U.S.C. § 231(a)(3), specifically relating to his confrontation with Officer Goodman.  ECF 50.  Trial is scheduled to begin on September 19, 2022.

## ARGUMENT

Jensen advances four arguments in support of his motion to dismiss Count One.  First, he claims the phrase "any act to obstruct, impede, or interfere" is unconstitutionally vague.  Def. Mtn. at 4.  Second, he argues that the phrase "incident to and during the commission of a civil disorder" is also "problematically vague."  *Id*. at 5.  Third, he suggests that the lack of a statutorily defined *mens rea* renders 18 U.S.C. § 231(a)(3) overly vague.  *Id.* Finally, Jensen claims that the civil disorder statute is overbroad in violation of the First Amendment.

Each of these arguments lacks merit. Jensen cannot meet the high bar required to invalidate a statute as vague or overbroad. Section 231(a)(3) sufficiently provides notice of the conduct it prohibits. Nor are there a substantial number of unconstitutional applications, particularly compared with the statute's plainly legitimate sweep. Vagueness and overbreadth are not judged according to whether a litigant might identify a hypothetical edge case where application of a law might be questionable, yet Jensen erroneously urges the Court to do so.

## I.  Legal Principles

### A.  The Indictment

An "indictment's main purpose is to inform the defendant of the nature of the accusation

against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). Dismissal of an indictment "is granted only in unusual circumstances." *Id*. "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

Count One charges a violation of the civil disorder statute, which criminalizes any "act" (or attempted act) to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder." 18 U.S.C. § 231(a)(3). The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

## B. Vagueness and Overbreadth Doctrines

The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply if its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or if reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling*

*v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963); *United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

A successful facial overbreadth challenge—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—is even more exceptional. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). The Supreme Court has "vigorously enforced the requirement that a

statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court[.]" *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613.

## II.  Jensen Has Not Met the High Bar to Invalidate the Civil Disorder Statute

### A.  Section 231(a)(3) is not Void for Vagueness

Section 231(a)(3) is not constitutionally vague. *See McHugh*, 21-cr-453, ECF No. 51, at 23*; Nordean*, 2021 WL 6134595, at *17. It provides sufficient notice of the conduct it prohibits. The terms Jensen attacks, "any act to obstruct, impede, or interfere" and "civil disorder," Def. Mtn. at 4-5, do not carry the potential for misunderstanding or make the statute "so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595; *see also Nordean*, 2021 WL 6134596*, at *16 (observing that "there are specific fact-based ways to determine whether a 'defendant's

conduct interferes with or impedes others,' or if a law enforcement officer is performing his official duties 'incident to and during' a civil disorder.").

### i. "Any Act to Obstruct, Impede, or Interfere" is Not Vague

Section 231(a)(3) does not prohibit mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *United States v. Mechanic*, 454 F.2d 849, 853 (8th Cir. 1971). And not just any act: it prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement carrying out their official duties during a civil disorder. It punishes intentional conduct, not "mere inadvertent conduct." *United States v. Featherston,* 461 F.2d 1119, 1122 (5th Cir. 1972).

Contrary to Jensen's arguments, the statute's terms are thus quite different from statutory terms that courts have found to be vague, such as statutes that turn on subjective judgments of whether a defendant's conduct was "alarm[ing]" or "annoying," or those that depend on the victim's state of mind, as in the cases defendant cites. *See Nordean,* 2021 WL 6134595, at *16; Def. Mtn. at 4, 6 (citing *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (*declining* to invalidate a city ordinance that prohibited "any act [undertaken] in such a manner to disturb or alarm the public" because judicial interpretations had sufficiently clarified the law's scope), *Coates*, 402 U.S. at 614, and *United States v. Kozminski,* 487 U.S. 931, 949–50 (1988)).[1] "An

---

[1] Jensen also cites *McCoy v. City of Columbia*, 929 F. Supp. 2d 541 (D.S.C. 2013) (Mot. at 9); he states that *McCoy* invalidated the law at issue as overbroad, but the court in *McCoy* in fact found it unconstitutionally vague. *Id*. at 554. In any event, *McCoy* is distinguishable. *See McHugh,* 21-cr-453, ECF No. 51, at 33. *McCoy* invalidated an ordinance making it unlawful "for any person to interfere with or molest a police officer in the lawful discharge of his duties." *Id.* at 546. As Judge Bates observed, unlike Section 231(a)(3), "the ordinance at issue in *McCoy* did not include a scienter requirement, and its use of only two operative verbs ('interfere and molest') prevented interpreters from . . . giving those words 'more precise content by the neighboring words with which it is associated." *McHugh*, at 33 n.24 (citing *McCoy*, 929 F. Supp. 2d at 553) ((quoting *United States v. Stevens*, 559 U.S. 460, 474 (2010)).

ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement." *McHugh,* 21-cr-453, ECF No. 51, at 33. In addition, Section 231(a)(3) is not unique; many state and federal statutes likewise criminalize "obstructing" the government's efforts to enforce the law and maintain public order, and they have been upheld. *See, e.g.,* 26 U.S.C. § 7212(a) (prohibiting obstructing or impeding the administration of the tax laws); 18 U.S.C. § 2237 (making it unlawful to "oppose, prevent, impede, intimidate or interfere with" a maritime investigation); *United States v. Brice,* 926 F.2d 925, 930–31 (9th Cir. 1991) (rejecting overbreadth and vagueness challenges to 41 C.F.R. § 101-20.305, regulation prohibiting impeding or disrupting government duties).

### ii. "Incident to and During the Commission of a Civil Disorder" is Clearly Defined and Serves to Limit the Statute's Reach

Jensen also claims that the phrase "incident to and during the commission of a civil disorder" is vague because it does not indicate whether an individual must have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event.  Def. Mtn. at 5. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)." *Mechanic*, 454 F.2d at 852; *see also United States v. Howard*, 2021 WL 3856290, at *14 (E.D. Wisc. Aug. 30, 2021) ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Contrary to Jensen's argument that any "tumultuous public gathering" could qualify, "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other

individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1) (defining the term "civil disorder"

for purposes of 18 U.S.C. § 231); *cf. United States v. Huff*, 630 F. App'x 471, 489 (6th Cir. 2015)

(unpublished) (rejecting vagueness challenge to "civil disorder" term as used in 18 U.S.C.

§ 231(a)(2)). *See McHugh*, 21-cr-453, ECF No. 51, at 32, 32 n.22.

And even if a broad range of public gatherings could be deemed "civil disorders," Section

231(a)(3) criminalizes only particular conduct, not mere participation in such a disorder. The "civil

disorder" language operates to <u>narrow</u> the situations where the statute may apply—unlike other

statutes, which criminalize acts of obstruction, wherever they may take place. *See* 26 U.S.C.

§ 7212(a) (criminalizing obstruction of tax laws). The requirement that the *actus reus*—an

obstructive, impeding, or interfering act—take place in the context of—that is, "incident to or

during the commission of"—a civil disorder does not make Section 231 vague; to the contrary, it

limits its application.

### iii.   Section 231(a)(3) Requires Intent to Obstruct, Impede, or Interfere

Jensen's argument that the statute is vague because it lacks an express scienter requirement

or *mens rea* (Mot. at 5–7) is wrong.  Jensen ignores the fact that Section 231(a)(3) requires *intent*,

which narrows its scope. *See Williams*, 553 U.S. at 294 (focusing on scienter requirement in

finding that a statute was not overbroad); *McHugh,* 21-cr-453, ECF No. 51, at 29–31 (finding that

Section 231(a)(3) includes an intent requirement). The statute requires proof that the "act" was

done "to obstruct, impede, or interfere" with a firefighter or police officer, *i.e.,* the defendant's

purpose or intent in performing the "act" must be to obstruct, impede, or interfere. *See Mechanic*,

854 F.2d at 854 (construing Section 231(a)(3) to include an intent requirement). And even if the

statute lacked an express scienter requirement, courts "generally interpret [] criminal statutes to

include broadly applicable scienter requirements, even where the statute by its terms does not

contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a *mens rea* element even when none appears on the face of the statute.").

### iv.  Jensen's Conduct Falls Squarely within Section 231(a)(3) and is Clearly Proscribed

Jensen's vagueness claim also fails because his conduct clearly falls within the ambit of Section 231. The Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean,* 2021 WL6134595, at *17 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up)); *see generally United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448, at *9 (D. Del. July 20, 2021) ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct"). The January 6, 2021 attack on the United States Capitol was clearly a "civil disorder," not just some "tumultuous public gathering" to which the police were called. And there is no question that Jensen participated in the disorder. Tracking the statutory language, the superseding indictment alleges that he "committed … an act to obstruct, impede, and interfere with a law enforcement officer[.]" ECF 50. Jensen scaled the wall of the U.S. Capitol building, climbed inside through a broken window, and chased Officer Goodman up a flight of stairs with a crowd of other rioters joining in the pursuit.  He was not some bystander yelling at police to desist. No one could credibly claim to believe that he could lawfully enter the Capitol during the riot, and then chase law enforcement officers who were attempting to stop his advances into the center of the building.  The statute is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of

whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854.

### B.  Section 231(a)(3) is not Unconstitutionally Overbroad

Jensen's next claim is that 231 criminalizes protected speech and is therefore at odds with the protections of the First Amendment.  Def. Mtn at 7-9.  Again, although Jensen does not mention it in his motion, "this exact argument has been heard and rejected by at least five different federal judges all within the last year." *McHugh*, ECF No. 51, at 35 (citing *Mostofsky*, 2021 WL 6049891, at *8–9; *Nordean*, 2021 WL 6134595, at *17; *Howard*, 2021 WL 3856290, at *11–12; *United States v. Phomma*, No. 20-465, 2021 WL 4199961, at *4-5 (D. Or. Sept. 15, 2021); *Wood*, 2021 WL 3048448, at *7–8).

Section 231(a)(3) is not overbroad because "the statute's potentially unconstitutional applications are few compared to its legitimate ones." *Mostofsky,* 2021 WL 6049891, at *8. The statute is directed at conduct, not speech, and "it simply does not prohibit peaceful expression or association." *See Nordean*, 2021 WL 6134595, at *17. An overbreadth challenge faces a steep uphill climb when the statute focuses mainly on conduct, as Section 231(a)(3) does. *See Hicks*, 539 U.S. at 119, 124 (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct" and observing that laws "not specifically addressed to speech or to conduct necessarily associated with speech" are far less likely to be overbroad).

Jensen argues that Section 231(a)(3) could prohibit conduct "undertaken merely to convey a message or symbolic content" (and protected by the First Amendment) because it applies to "any act to obstruct, impede, or interfere." Mot. at 4. Even if there could be "limited instances in which speaking constitutes the 'act' of interfering with a law-enforcement officer," *Mostofsky,* 2021 WL 6049891, at *8, those instances are just that: limited. *McHugh*, 21-cr-453, ECF No. 51, at 36. As

Judge Boasberg concluded in *Mostofsky*, Section 231's "plain text, however, indicates that it is 'targeted primarily if not exclusively at conduct rather than speech.'" *Id.* (citing *Phomma*, 2021 WL 4199961, at *5); *see also Nordean,* 2021 WL 6134595, at *17 ("Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association."); *Mechanic*, 454 F.2d at 852 (Section 231 "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen"), *see also Wood*, 2021 WL 3048448, at *7 ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech."). As such, it is unlikely to present a "realistic danger" that it will "significantly compromise recognized First Amendment protections." *Mostofsky,* 2021 WL 6049891, at *17 (quoting *Vincent,* 466 at 800).

Jensen relatedly contends that Section 231 "casts far too wide a net" because it is not limited to "'violent acts' or acts that result in bodily injury or that otherwise put persons or property in imminent danger," and could therefore reach "acts with protected expressive content or those that occur in a traditional public forum." Def. Mtn. at 7.[2] Jensen offers examples of potential unlawful applications of Section 231(a)(3), such as a "bystander who yells at police to desist from an arrest, one who gestures at officers to distract or to encourage resistance, or one who records police activity with a cell phone." Def. Mtn. at 8. It is not clear whether any of these hypotheticals would in fact violate the statute, which requires an "act" to "obstruct, impede, or interfere with" law enforcement. Even if they did, Jensen's hypotheticals do not undermine the conclusion that "[m]any more potential applications would fall within the statute's plainly legitimate sweep."

---

[2] Jensen's reference to "acts…that occur in a traditional public forum" is misguided. While there is a greater right to speak in a public forum, there is no right to engage in non-protected (indeed, criminal) conduct there. Moreover, on January 6, 2021, the Capitol building was a "restricted building or ground," 18 U.S.C. § 1752(c)(1)(B), not a public forum.

*Mostofsky,* 2021 WL 6049891, at *8 (citation omitted). As noted above, the statute prohibits both violent acts (which are not protected by the First Amendment), and non-violent conduct that is not expressive, such as "creating a barricade to prevent officers' movement." *See id.* Again, "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Nordean*, 2021 WL 6134595, at *17 (quoting *Vincent*, 466 U.S. at 800); *see also Howard*, 2021 WL 3856290, at *11 (rejecting overbreadth claim while noting that "because the statute does not require a violent act or an assaultive act, the government perhaps could charge someone who yelled at an officer during a civil disorder and could argue that the yelling was an 'act' that 'attempted to obstruct' an officer performing her lawful duties"). Courts have denied similar challenges to Section 231(a)(3) while recognizing that the statute is not limited to "violent" acts for the simple reason that the statute is not overbroad, as explained above, and so no limiting construction is required. *See, e.g., Mostofsky,* 2021 WL 6049891 at *9 (finding that "the Court need not adopt a limiting construction such that § 231(a)(3) reaches only violent conduct" to uphold the statute and collecting cases); *see also McHugh,* 21-cr-453, ECF No. 51, at 36 n.26, *Wood*, 2021 WL 3048448, at *7 (rejecting overbreadth challenge to § 231(a)(3) while recognizing that it is possible for nonviolent acts to also fall within the statute's prohibition.").[3]

In short, Jensen has failed to show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent*,

---

[3] While *Mechanic* states that Section 231(a)(3) "applies only to violent physical acts," courts do not take this to mean that it imposed such a limitation on the statute; rather, "it appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case—throwing cherry bombs at police officers and firemen—when it referenced "violent acts." *Howard,* 2021 WL 3856290, at *11; *Nordean,* 2021 WL 6134595 at *17 n.14.

466 U.S. at 801.  His overbreadth and vagueness challenges fail.  There is, therefore, no basis to invalidate the statute and no cause to determine whether the statute is "readily susceptible" to a narrowing construction. *American Booksellers*, 484 U.S. at 397.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Count One should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, DC 20530
emily.allen@usdoj.gov
(907) 271-4724