UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**PUBLIC**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 21cr0006 (TJK) |
| ) | |
| DOUGLAS A. JENSEN ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, by and through counsel, respectfully submits this memorandum in aid of sentencing. He respectfully requests that he be sentenced to 27 months.

### PROCEDURAL BACKGROUND

1. Mr. Jensen was convicted by a jury on September 23, 2022 of violations of 18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. §§ l512(c)(2), *2* (Obstruction of an Official Proceeding); 18 U.S.C. § 11 l(a)(l) (Assaulting, Resisting, or Impeding Certain Officers); 18 U.S.C. § l752(a)(1) and (b)(l)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon); 18 U.S.C. § 1752(a)(2) and (b)(l)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. §

5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). He did not testify at his trial.

## MATERIAL ERRORS IN PSR

2. There are material errors in the Presentence Report (PSR).

3. The PSR documents Mr. Jensen's sentencing guidelines calculation. The PSR notes a total offense level of 25 and a criminal history category of I – resulting in a sentencing range of 57 months to 71 months. *See*, PSR at ¶ 152.

4. Mr. Jensen should not receive an 8-point enhancement as identified in ¶ 60 of the PSR. U.S.S.G. §2J1.2(b)(1)(B) adds an 8-point enhancement if the offense involved causing or threatening to cause physical injury to a person, or property damage, to obstruct the *administration of justice*. Text, context, and precedent show that the "administration of justice" most naturally refers to a judicial or related proceeding that determines rights or obligations. The electoral certification was not such a proceeding. *See*, *U.S. V. Hunter Seefried*, DCDC, 21-cr-00287 (TNM), Dkt. # 123 at 1, October 10, 2022; *United States v. Christian Secor, DCDC,* 21-cr-00157 (TNM), Dkt. # 56 at 17-20, October 24, 2022. Eliminating this 8-point enhancement, Mr. Jensen's base offense level becomes 17.

5. Mr. Jensen should not receive a 3-point enhancement as identified in ¶ 61 of the PSR. U.S.S.G. §2J1.2(b)(2) adds a 3-point enhancement because the offense resulted in the substantial interference with the *administration of justice*. Text,

2

context, and precedent show that the "administration of justice" most naturally refers to a judicial or related proceeding that determines rights or obligations. The electoral certification was not such a proceeding. See, *U.S. V. Hunter Seefried*, DCDC, vol. No. 1:21-cr-00287 (TNM), no. Docket 123, October 10, 2022; *United States v. Christian Secor, DCDC,* 21-cr-00157 (TNM), Dkt. # 56 at 17-20, October 24, 2022. By eliminating this 3-point enhancement, Mr. Jensen's base offense level becomes a level 14.

6. Mr. Jensen accepted responsibility for his actions from day one. Paragraph 33 of the PSR cites a comment Mr. Jensen made during his initial taped interview with the FBI, "*I don't blame anybody else. I don't blame the President, I don't blame, you know, I'm going to take responsibility for what I did ......*" He was completely honest during his lengthy recorded interview. He presented no testimony or evidence to the contrary at trial. He still accepts responsibility for what he did, he was just laboring under a cloud of confusion precipitated by many factors, as discussed below. He should receive a 2-point reduction for acceptance of responsibility.

7. For counts grouped pursuant to USSG §3D1.2(a)-(c), the offense level becomes the level of the group which produces the highest offense level. U.S.S.G.

§ 2A2.2 produces the highest offense level, with a base offense level of 14.[1] U.S.S.G. § 3A1.2 Official Victim adds 6 points to this, resulting in a base offense level of 20 months. A 2-point adjustment for acceptance of responsibility would result in an adjusted base offense level of 18. A Criminal History Category I with a base offense level of 18 results in a guideline range of 27 months to 33 months.

8.  In the event the Court disagrees with any of the previously discussed adjustments to Mr. Jensen's guideline calculation, he respectfully submits that there are grounds to grant him a substantial variance, as detailed below.

## GUIDELINES ARE NOT MADATORY

9. As it knows, the Court has broad discretion to consider every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101. The Court must impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661.

---

[1] Count Three produces the highest offense level. 18 U.S.C. § 11 l(a)(l) (Assaulting, Resisting, or Impeding Certain Officers).

4

## SENTENCING FACTORS

10. The core requirement of 18 U.S.C. §3553(a) is that the court impose *"a sentence sufficient, but not greater than necessary"* to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

• The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

• the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

• the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

• the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

• the need for the sentence imposed "to *provide the defendant with needed educational or vocational training, medical care*, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D);

• the kinds of available sentences available, 18 U.S.C. § 3553(a)(3);

• the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

• "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6);

• "the need to provide restitution to any victims of the offenses," 18 U.S.C. § 3553(a)(7).

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

11. Mr. Jensen is a passionate man who became embroiled in conspiracy theories and conservative politics. However, he has no history of being a political activist. He is an uneducated union laborer who became overwhelmed by conspiracy theories disseminated on the internet. He came to Washington, DC on January 6, 2021, to show his support for the former president. As with many who came to Washington that day, he succumbed to what he believed was the role of a "patriot." He honestly believed that the 2020 election had been stolen and believed that he should be a part of history by observing and assisting in correcting the situation. He believed that he had the support of the former president and fully expected the perceived wrong was going to be corrected. He was wrong. And now he remains incarcerated almost 2 years later, while his family suffers his absence.

12. There is no question that the January 6 attack on the Capitol was horrific. However, Mr. Jensen did not destroy any government property, nor did he threaten to physically injure anyone, much less do so. He did not come dressed for combat;

he arrived as a walking advertisement for QAnon. He came with no plan other than to hear the former President speak. At the time, he was sleep deprived and overwhelmed by conspiracy theories. He believed the "storm" had arrived and that corrupt politicians were going to be arrested. To that end, he confronted officers demanding that they do their job and arrest the perceived culprits.

13. Jensen had his work pocketknife with him on January 6, as he did when he surrendered himself to the FBI on January 8, 2021. He always carried that pocketknife. It did not leave his pocket at any time on January 6. The FBI interviewed Mr. Jensen for hours. He did not lie to them. He responded to any questions asked with brutal honesty. He was completely cooperative.

## CHARACTERISTICS OF THE DEFENDANT

### Childhood   (SEALED)

14.

15.

16.

17.

### Adult Life

18. Doug Jensen married at an early age. He remains happily married, despite all that has occurred since January 6. He is a hard worker. He has supported himself since age 16. He has worked long hours and was away from home to give

his family the type of life he never had as a child. He has a steady verified employment record.

19. Many people from the community reached out to let this Court know that this is a kind and compassionate man, who would give one "the shirt off his back" if you needed it. Ex. 2  Character Letters. He asks this Court to look at the man he is, not just who he became on that one day in his life.

20. Doug Jensen is notable for the theatrical presence he exhibited during the assault on the capitol, not for his violence.[2] He has been in incarcerated for almost 2 years. Much of it spent in isolation. This certainly accounts for the seriousness of his offenses.

21. Deterrence is a non-issue. The isolation of the pandemic, the allegations of the former president, and QAnon drops are all a thing of the past. Jensen had never been incarcerated before, much less held in isolation for lengthy periods of time. He has had more than enough time to dwell upon his actions. He wants to return to his normal life, raise his children, and be with his wife.

---

[2] The United States attempted to characterize Jensen as a volatile individual, citing two uncharged incidents and an incident at Lewisburg during his pre-trial detention. As to the two uncharged incidents, one involved his niece who was being threatened by her boyfriend – who in fact assaulted Jensen with a knife. The other was simply a heated exchange on a list serve. In any event, neither of these incidents were charged. The incident at Lewisburg involved an inmate nicknamed "Blood Bath" by the other inmates. Blood Bath is an imposing Transexual individual who has assaulted many inmates at Lewisburg. Jensen was simply protecting himself.

22. Doug Jensen has never presented a danger to the public. It is not in his character.

### NEEDED MEDICAL CARE & CORRECTIONAL TREATMENT
### *(SEALED)*

23.

### SENTENCING DISPARITY

24. Everyone is different. Each person comes to the table with many different strengths, weakness, and from different backgrounds. Mr. Jensen's actions on January 6th were fueled by an assortment of conspiracy theories, especially QAnon. Mr. Jensen's personal background puts him in the distinct category of being an outlier among the January 6 defendants. The core catalyst for his belief system is tied to events that were, at one point in time, simply beyond his control. The United States cites many obstruction cases, but none of these individuals came to DC for the reasons that brought Jensen to Washington on January 6. He is different and should be treated accordingly.

### CONCLUSION

Mr. Johnson submits that a sentence 27 months is a *"sentence sufficient, but not greater than necessary"* to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

_____/s/_____
Christopher M. Davis #385582
Counsel for Douglas Jensen
Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served on the United States via the Court's CM/ECF System on this 9th day of December 2022.

_____/s/_____
Christopher M. Davis

10